Jesus Eduardo Arias, Esq. LL.M.  [ SBN  293983 ]
**LAW OFFICES OF JESUS EDUARDO ARIAS**
18000 Studebaker Rd. Suite 700
Cerritos California 90703
E|  jearias@jesuseduardoarias.com
Tel|  323) 815 9450  Fax|  323) 375 1196
*Attorney for Plaintiff*  Dolores Rosales

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

'19 CV 2303 JLS  LL

DOLORES ROSALES,                    )
                                    )
                    Plaintiff,      )
          vs.                       )
                                    )
COUNTY OF SAN DIEGO; SHERIFF)
WILLIAM D. GORE, an individual; Deputy)
Terence  YORK  an  individual;Deputy)
Brandon DELIMA  an individual; Deputy)
Evan MCCORMICK an individual; Deputy)
Nicholas ADAMS an  individual; Deputy)
Eric COTRELL Jr. an individual, Deputy)
Carl FIELSTRA  an individual; Deputy Brian)
SCHAEFER  an  individual;  Deputy)
Christopher PEREZ an individual; Sergeant)
Dwain WASHINGTON  an  individual,)
Deputy Ronald BUSHNELL an individual;)
Deputy Steven FEALY an  individual;)
Deputy Scott ROSALL an individual; DOES)
1 through 50, inclusive.

                    Defendants,

**COMPLAINT FOR DAMAGES**

1. 4th- 14th  Amendment—Substantive Due Process Viol. 42 U.S.C. § 1983 (Interference familial relationship)
2. 4th-14th Amendment.42 U.S.C.§ 1983 (Unreasonable use of force)
3. 4th-14thAmendment 42 U.S.C. § 1983 (Denial medical care and deliberate indifference to serious medical need)
4. Municipal Liability—Ratification of unconstitutional acts 42 USC § 1983
5. Municipal Liability-Failure to train 42 U.S.C. § 1983
6. Municipal Liability-Unconstitutional Customs & Practices 42 U.S.C.1983
7. Gral. Negligence -Wrongful Death Under Ca. Law & Gov. Code  §820
8. Violation Cal. Civil Code § 51; 51.7 & 52.1 *( Bane Act )*
9. False Arrest - False Imprisonment
10. Battery under California Law
11. Violation to the  4th Amendment & 14th Amendment -unreasonable search & seizures (taking of blood without consent or warrant.

**[ DEMAND FOR JURY TRIAL]**

# COMPLAINT FOR DAMAGES

¨Plaintiff¨ DOLORES ROSALES is the mother and the successor in interest to decedent, MARCO ANTONIO NAPOLES. Plaintiff individually and as successor in interest brings this Civil Complaint for violation of civil rights and for wrongful death against Defendants; County of San Diego (¨COUNTY¨); SHERIFF WILLIAM D. GORE ("SHERIFF GORE") an individual; Deputy Terence York, an individual; Deputy Brandon Delima an individual; Deputy Evan McCormick an individual, Deputy Nicholas Adams an individual; Deputy Eric Cottrell Jr. an individual, Deputy Carl Fielstra an individual; Deputy Brian Schaefer, an individual; Deputy Christopher Perez, an individual; Sergeant Dwain Washington an individual, Deputy Ronald Bushnell an individual; Deputy Steven Fealy an individual; Deputy Scott Rosall an individual; and DOES 1 through 50 inclusive; and respectfully allege as follows:

## I.   JURISDICTION AND VENUE

1. This civil action is brought for redress of violations to constitutional rights protected under 42 U.S.C. § 1983, 1985, 1986, 1988, and for violations to the Fourth & Fourteenth Amendments of the United States Constitution. Jurisdiction is based under 28 U.S.C. § 1331,1343,367. This Honorable US District Court has supplemental jurisdiction over Plaintiff's State claims pursuant to 28 U.S.C. § 1367 (a) because those claims are intrinsically related to the federal claims and they form part of the same case and controversy under Article III of the US Constitution.

2. Venue in this District Court is proper under 28 U.S.C. § 1391(b), because all Defendants reside in this Judicial District and all of the incidents and occurrences giving rise to this case occurred within the geographical area covered by this Southern Judicial District. The amount in controversy exceeds the minimum jurisdictional limits.

3.  Plaintiff DOLORES ROSALES duly filed and served Government Claim pursuant to California Government Code Section 910 et seq. Defendant County of San Diego rejected the claim on August 30, 2019. This Complaint is filed within 6 months from the date of the Governmental claim's rejection.

## II.   <u>INTRODUCTION</u>

4.  This action seeks compensatory damages from Defendants for serious violations to various rights under the United States Constitution and under California State law resulting in the death of Marco Antonio Napoles a 29 years old man.

5.  Defendants used unreasonable force resulting in the death of NAPOLES. Video footage evidence shows shocking images of the excessive use of force. In support, Plaintiff is concurrently seeking leave of Court to submit for filing; video footage excerpts as **EXHIBIT 1** of the Complaint. (per CASD ECF rules and procedures).

6.  Plaintiff is the mother of the decedent. Legal standing is vested pursuant California Civil Procedure Code §377.60 (b). A Declaration pursuant CCP 377.32 is here enclosed as **EXHIBIT 2.**

7.  Plaintiff acts in her individual capacity and as successor in interest to Decedent for wrongful death damages including survival damages for Mr. Marco Napoles' death, for the loss of enjoyment of his life, and his pre-death pain and suffering.

## III.   <u>PARTIES</u>

8.  At all relevant times Decedent MARCO ANTONIO NAPOLES ("NAPOLES") was an habitual resident of el Monte California County of Los Angeles.

9.  At all relevant times Plaintiff DOLORES ROSALES was an resident of Tijuana Baja California, Mexico, with legal US Immigration authorization to enter to the United States. Plaintiff is the natural mother of Decedent Marco Antonio Napoles.

Plaintiff was dependent upon her son at the time of his death for the necessities of her life, including and not limited to shelter, food, and medical care.

10. At all relevant times, Defendant COUNTY OF SAN DIEGO ("COUNTY") was a municipal corporation existing under the laws of the State of California. "COUNTY" is a chartered subdivision of the State of California with the capacity to be sued pursuant to 42 U.S.C § 1983 as upheld by *Monell v. Dpt. Of Social Services (1978) 436 US. 658, 691.* COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the County of San Diego Sheriff's Department ("SDSD"). Its agents and employees. At all relevant times, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the SDSD and its employees and agents complied with the laws of the United States and Ca Law.

11. Defendant ("SHERIFF GORE") is the Sheriff for the County of San Diego. Plaintiff is informed and believe and based thereon alleges that at all relevant times, "SHERIFF GORE" was responsible for implementing, maintaining, sanctioning or condoning policies, customs and / or practices under which other defendants committed the illegal, unconstitutional and wrongful acts hereinafter complained of. By reason of ratification and condoning of these policies, practices and customs, Defendant SHERIFF GORE is liable for the damages hereinafter complained of. Thus, Plaintiff sues Defendant SHERIFF GORE in official and personal capacity.

12. At all relevant times, Defendant TERENCE YORK, ("YORK"), was a Sheriff's deputy working for SDSD. YORK was acting under color of law and within the course and scope of his employment as a deputy for SDSD. YORK was acting within the complete authority and ratification of his principal, (COUNTY).

13. At all relevant times, Defendant BRANDON DELIMA, ("DELIMA"), was a Sheriff's deputy working for SDSD. DELIMA was acting under color of law and within the course and scope of his employment as a deputy for SDSD. DELIMA was acting within the complete authority and ratification of principal -COUNTY.

14. At all relevant times, Defendant EVAN MCCORMICK, ("MCCORMICK"), was a Sheriff's deputy working for SDSD. MCCORMICK was acting under color of law and within the course and scope of his employment as a deputy for SDSD. MCCORMICK was acting within the complete authority and ratification of his principal - Defendant COUNTY.

15. At all relevant times, Defendant NICHOLAS ADAMS, ("ADAMS"), was a Sheriff's deputy working for SDSD. ADAMS was acting under color of law and within the course and scope of his employment as a deputy for SDSD. ADAMS was acting within the complete authority and ratification of Defendant COUNTY.

16. At all relevant times, Defendant ERICK COTTRELL was a Sheriff's deputy working for SDSD. COTTRELL was acting under color of law and within the course and scope of his employment as a deputy for SDSD. He was acting within the complete authority and ratification of his principal, Defendant COUNTY.

17. At all relevant times, Defendant CARL FIELSTRA was a Sheriff's deputy working for SDSD. FIELSTRA was acting under color of law and within the course and scope of his employment as a deputy for SDSD. FIELSTRA was acting within the complete authority and ratification of his principal, Defendant COUNTY.

18. At all relevant times, Defendant BRIAN SCHAEFER, ("SCHAEFER"), was a Sheriff's deputy working for SDSD. SCHAEFER was acting under color of law and within the course and scope of his employment as a deputy for SDSD. SCHAEFER was acting within the complete authority and ratification of his principal COUNTY.

19. At all relevant times, Defendant CHRISTOPHER PEREZ, ("PEREZ"), was a Sheriff's deputy working for SDSD. PEREZ was acting under color of law and within the course and scope of his employment as a deputy for SDSD. PEREZ was acting within the complete authority and ratification of his principal, COUNTY.

20. At all relevant times, Defendant Sergeant DWAIN WASHINGTON, ("WASHINGTON"), was a Sheriff's Sergeant working for SDSD. WASHINGTON was acting under color of law and within the course and scope

of his employment as a Sergeant for SDSD. WASHINGTON was acting within the complete authority and ratification of his principal, Defendant COUNTY.

21. At all relevant times, Defendant RONALD BUSHNELL was a Sheriff's deputy working for SDSD. BUSHNELL was acting under color of law and within the course and scope of his employment as a deputy for SDSD. BUSHNELL was acting within the complete authority and ratification of his principal -County.

22. At all relevant times, Defendant STEVEN FEALY ("FEALY"), was a Sheriff's Deputy working for SDSD. FEALY was acting under color of law and within the course and scope of his employment as a deputy for SDSD. FEALY was acting within the complete authority and ratification of his principal THE COUNTY.

23. At all relevant times, Defendant SCOTT ROSALL ("ROSALL"), was a Sheriff's Deputy working for SDSD. ROSALL was acting under color of law and within the course and scope of his employment as a deputy for SDSD. ROSALL was acting within the complete authority and ratification of Defendant "County".

24. Plaintiff reasonably believes and therefore here alleges that at all relevant times, the individual Defendants DOES 1-50 were residents of the County of San Diego.

25. All individually named Defendants are sued in their individual capacities.


## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF


26. PLAINTIFF repeats and re-alleges each and every foregoing allegation with the same force and effect as if fully set forth herein.

27. Marco Napoles was 29 years old at the time of his death. He was a student pursuing a career as a Barber and he worked at Barbershops in the City of el Monte California. He had no criminal background and he had no children. He supported his mother financially. Plaintiff- relied on Decedent for her life necessities.

28. **On August 16 2018,** upon plaintiff's information and belief NAPOLES was traveling from or to Temecula California when his vehicle Nissan Altima

malfunctioned. He left his car on the side of the highway and looked for help. He walked to the nearest Gas Station which was miles away located at 4730 Highway 76 in the City of Fallbrook, California County of San Diego.

29. The following factual events have been recorded on video. (Sheriff Deputy's body cameras, surveillance video from the gas station store and by-stander witness' cellphone recordings). Excerpts of these videos is submitted as Exhibit No. 1

30. When NAPOLES entered to the Gas Station store, he talked to an employee and asked her for help. i.e. He asked if she could let him charge his cellphone at the store. Napoles wanted to call his family & friends and ask them to pick him up. The employee nicely let him use her phone to make a phone call while NAPOLES' phone was being charged. It was around 2 to 4 am when Marco was at this Gas Station in the middle of a Highway simply asking for help.

31. While he was inside the Gas Station store NAPOLES did not threat any body, nor he acted in any way that would cause the store employees or anybody to feel threatened or in imminent danger. In fact, video surveillance shows NAPOLES remained in the store for several minutes simply waiting for his phone to be charged. Upon Plaintiff's information and belief, NAPOLES felt safer by being at a this Gas Station Store rather than being somewhere else. ( The surrounding area to the gas station in turn was desolate and very dark). His car was miles away.

32. Surveillance video shows that NAPOLES was normally chatting with other store employees and even with other customers without being a threat or a danger to anyone. At or around 4:30 am, a new store employee came to the store. Upon Plaintiff's information and belief, she was a manager and she apparently did not want NAPOLES to be standing inside the store for prolonged time. The manager told NAPOLES that he should leave or he should stand outside the store near the gas pumps or the parking area. NAPOLES stayed outside the door of the store near the gas pumps. He was not aggressive or violent to anyone and at no point he acted in any threatening manner when he was inside the store. He was simply waiting for his phone to be charged and trying to reach for friends or family to be picked up.

33. Upon information and belief, NAPOLES sometimes would get back inside the store presumably to check the status of his cellphone charging. At some point thereafter, the manager decided to call the police and report that there was a "Customer who was just standing in the store and not leaving after being told to leave". Upon information & belief the call was received by a 911 operator who asked a store employee specifically whether the suspect had any weapons or anything ?  The employee replied that she was not aware of any.

34. NAPOLES was not an imminent danger or threat to any one, and such fact was clearly communicated by the employee to the 911 call operator indicating that they just wanted him to be outside the store area.

35.  Approximately at 04:50 hours, San Diego Sheriff's Deputy Terence York (YORK) responded to the scene in his Patrol vehicle without emergency lights. When Deputy YORK arrived he approached NAPOLES who was indeed outside the store, near the Gas Pumps. YORK had a normal conversation with NAPOLES in which NAPOLES explained to the Deputy that his car let him down and that he needed help  because he was far away  from home. He wanted to call his friends or family to be picked up. NAPOLES was polite to Deputy YORK and never violent. NAPOLES was not a threat. NAPOLES was not armed in any way. He had no criminal record and he had no other interest at the gas station other than get help.

36. NAPOLES showed Deputy YORK his California ID and YORK checked NAPOLES's criminal background with his Sheriff's Dpt. Dispatch. Upon information and belief, YORK was informed by his dispatch that NAPOLES had no criminal records. Deputy YORK and NAPOLES continued talk in a normal fashion as the evidence -video shows for approximately 20 minutes.

37. NAPOLES told YORK on many times that he "just needed help" either  to tow his car or to call his family  or friends because his car  was not working. NAPOLES was clearly not a threat to Deputy YORK neither to anyone else. Deputy YORK allowed  NAPOLES to use his cell phone (York's phone)  so he could call his friends or family  to pick him up.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

38. One friend answered and upon information and belief he told NAPOLES that it was too early. That he could probably come and help NAPOLES but later that day.

39. NAPOLES insisted asking his friend to come as quickly as possible because he felt he was in a dangerous place. The phone call ended and NAPOLES in apologetic tone  thanked Deputy YORK for letting him use his cell phone to call his friend.

40. NAPOLES asked Deputy YORK if it was ok to stay outside the store near the Gas Station Pumps. After all, the Manager said  that he could stay around the pumps or in the parking area  as long  as he was not inside the store.

41. YORK told NAPOLES that the Manager did not want him anywhere around the store and that he had to leave. NAPOLES was at all times polite and respectful to Deputy YORK asking if he could stay at least near the illuminated area because he was afraid that something could happen to him. NAPOLES never engaged in any conduct that warranted the use of force by DEPUTY YORK. NAPOLES had no place to go, he was miles away from his non operable car,  hundreds of miles away from his home and his phone was not working either. NAPOLES walked around the corner of the Gas station after Deputy YORK told him that he definitely had to leave  totally outside the premises of the Gas Station. NAPOLES regrettably complied with Deputy YORK'S orders and upon information and belief he walked towards a zone adjacent to the gas station. Deputy YORK went back to his patrol vehicle and remained inside his vehicle near the gas station parking.

42. Upon information and belief a few minutes later YORK observed that NAPOLES was walking near the Gas Pumps although he appeared to be now going towards the sidewalk adjacent to gas station. DEPUTY YORK approached NAPOLES for a second time. But this time, Deputy YORK in a raised level of voice and command told NAPOLES to take his back pack off, while at the same time he engaged in the use of force pulling NAPOLES by the arm. Using force to apparently submit NAPOLES.

43. At that precise time as you will see on the video (Exhibit No. 1) a second San Diego County Sheriff's Deputy, Defendant   BRANDON "DELIMA" arrived to the

PLAINTIFF'S COMPLAINT  FOR DAMAGES

scene. NAPOLES then was forcefully thrown to the ground by both Deputies who were yelling to NAPOLES "stop resisting". NAPOLES did nothing to prompt the use of force. At third Deputy from San Diego Sheriff's Department arrived. Defendant Deputy FIELSTRA who was apparently just driving by the area who approached to "assist" YORK and DELIMA. Lastly, a border patrol agent was also driving nearby and decided to step out of his vehicle and approach to the area.

44. When NAPOLES was thrown by force to the ground DEFENDANTS; YORK, DELIMA AND FIELSTRA used unreasonable force by placing their bodies on top of NAPOLES and deliberately hitting him with punches without any legal justification. NAPOLES was never violent to the Deputies. Instead, he was asking for help. At no point he was a threat to DEFENDANTS YORK, DELIMA OR FIELSTRA. NAPOLES had no weapons. NAPOLES had no criminal record. NAPOLES had not been violent towards YORK nor to anyone. NAPOLES was not an imminent threat to any of DEFENDANTS; YORK, DELIMA OR FIELSTRA. NAPOLES was clearly asking the Deputies to stop using force, Defendant DELIMA however, unreasonably pulled out his Taser Gun and shot NAPOLES with his TASER GUN on several occasions at a very close range.

45. Upon plaintiff's information and belief NAPOLES was shot with DELIMA's Taser Gun several times. Approximately more than 6 times, to his chest and to his back. DELIMA shot his taser at NAPOLES on shooting mode and stun mode. NAPOLES can be heard on the body cam videos screaming for help, asking the Deputies to Stop using the taser. NAPOLES was screaming in pain asking for help and begging the Deputies to stop. The Deputies "apparently" lost their body cams in the struggle, which ended down on the rocks recording audio but pointing the video camera away from the struggle. A bystander eye witness however, recorded part of these incidents of force with his cell phone. And as Exhibit 1 shows, Defendants YORK, DELIMA AND FIELSTRA indeed used unreasonable force against NAPOLES hitting him on the ground just moments before DELIMA decided to use his taser against NAPOLES unnecessarily engaging in force again.

46. Moments later YORK is heard on the videos claiming that he was bit on his thumb.

47. Upon information and belief, YORK had been bit on his thumb by a Dog days before this incident, while he was training a Dog as a K9 officer. The body cams footage and the audio show that NAPOLES denied the bit.

48. **After this** **first incident of unreasonable use of force** by Defendants YORK, DELIMA AND FIELSTRA against NAPOLES, he ended up being already handcuffed, submitted by force to the ground, considerably injured by the multiple taser deployments, and the use of force by the Deputies. NAPOLES is heard on the video on multiple times clearly asking for help. Upon information and belief bystanders witnesses could hear NAPOLES yelling for help saying "please help me... please call 911, please help... they are going to kill me".

49. When NAPOLES was already handcuffed, tasered on multiple times, already on the ground, and undoubtedly under the total control of DEFENDANTS YORK, DELIMA AND FIELSTRA, the Defendants did not proceed to seek and provide medical care to NAPOLES for the taser deployments and the use of force. Instead, they requested additional Deputies to the scene, and also requested an extreme restrain device called the **"WRAP"** . Defendants ignored NAPOLES' pleas for help.

50. Deputy Defendant Evan McCormick (MCCORMICK) was one of the "additional Deputies" of the several Deputies that responded to the incident. When MCCORMICK arrived to the scene, as the body cam videos show, MCCORMICK applied all of his body weight upon NAPOLES body despite the fact that NAPOLES was on the ground, injured, tasered, and handcuffed. MCCORMICK used objectively unreasonable force by applying intense pressure with his knees and his 300 pounds body weight applied to NAPOLES chest. And then he outrageously used an air choke hold force technique forcefully pushing NAPOLES head and neck around the carotid artery using both of this hands with full force causing excruciating pain to NAPOLES. Defendant MCCORMICK dangerously obstructed NAPOLES ability to breath.

51. Upon information and belief Defendant MCCORMICK  intentionally used unreasonable force by applying this restraint technique which involves pressure to the  carotid artery area obstructing the airflow to NAPOLES' head and brain.

52. When MCCORMICK was engaging in this **Second incident of unreasonable use of force** against the decedent, NAPOLES asked multiple times for help, he told Deputy MCCORMICK specifically "Excuse me, I need to stand up ". He could not breath and he literally  yelled to the Defendants I am f….. dying ".  NAPOLES was not a threat to MCCORMICK  nor to anyone else.  NAPOLES was handcuffed, he had been already  tasered on multiple times, he was severely injured, he was submitted on the ground, he had no weapons, he had no criminal record, he did nothing to be subject to such shameful methods of restrain and excessive force.

53. NAPOLES lost consciousness moments after he was subject to MCCORMICK's air choke hold. As shown on the video ( Exhibit No. 1) the acts of Defendants, specially   MCCORMICK 's conduct was objectively unreasonable, further in-humane and shocking. The fact that  MCCORMICK  was yelling to his now fatal victim "stop resisting" while in essence  he was killing a vulnerable human being, should definitely  shock the conscience of anybody who is able to see this on video. Defendant's conduct was not only unreasonable but slaughterous.

54. **A third incident of unreasonable use of force against decedent** occurred when DEFENDANT MCCORMICK, Defendants ADAMS, PEREZ, SCHAEFER, COTRELL, DELIMA and DOES 1-10 used unreasonable force against NAPOLES by placing  their body weight on top of NAPOLES body who was already in serious need of medical attention, unconscious, and possibly having problems to breath. Just Deputy MCCORCMICK's body alone with his gear uniform weights more than 300 pounds. NAPOLES had at some point 4 deputies using their knees and bodies  on top of him before they started to apply the extreme restraint device called the  **"WRAP"**.

55. The WRAP is an extreme method of body restraint which is apparently used to restrain uncontrollable individuals by tying their whole body inside the device impeding the person's body mobility in any way.

56. Defendants decided to place NAPOLES on the WRAP device knowing that NAPOLES was unconscious as result of MCCORMICK'S air choke hold, and physically injured by the multiple taser shots of DELIMA. Defendants carelessly continued to use force against an inert body of NAPOLES to apply their "WRAP".

57. Plaintiff alleges that the conduct of Defendants in this deadly incident was unconstitutional and constituted more clearly a criminal homicide recorded on video rather than reasonable law enforcement procedural conduct. This matter was brought to the Attention of the San Diego County District Attorney's office for investigation. The DA's office determined -as usual- that the law enforcement personnel acted reasonably under the circumstances and shall bear no state liability.

58. The second and the third main incidents of excessive force happened in the presence of multiple SDSD Deputies who responded to the scene. Including Defendant SERGEANT DWAIN WASHINGTON, who did nothing to stop his Deputies from engaging in the wrongful conduct described above. By failing to act, Defendant WASHINGTON affirmatively ratified and approved the wrongful conduct of his Sheriff Deputies. Therefore he is liable for deliberate indifference to unconstitutional acts committed in front of him doing nothing to prevent a death.

59. After NAPOLES was subject to all of the above egregious abuse of force, Paramedics from the North County Fire Protection District (NCFPD) who have arrived to treat Deputy YORK but not NAPOLES, asked the Deputies if NAPOLES needed attention and if they could evaluate his medical condition.

60. DEFENDANTS clearly knew that NAPOLES had been tasered, subject of force, subject to limitation of movement, and had been left unconscious by MCCORMICK'S air choke restraint. Despite all the above, in deliberate indifference to a serious medical need, Defendants were not allowing the

paramedics to operate freely and to medically evaluate NAPOLES without the WRAP device continuing to be applied to his body.

61. Moreover, DEFENDANT MCCORMICK outrageously decided to intervene again and placed a SPIT BAG covering Napoles' inert head aggravating the possibility of NAPOLES being unable to breath at all. NAPOLES was eventually taken to the ambulance after the placing of the bag to his head.

62. DEFENDANTS STEVEN FEALY AND SCOTT ROSALL boarded the ambulance too. FEALY AND ROSALL did not allow the paramedics to medically evaluate and treat NAPOLES unrestrained despite the medical emergency situation. Defendants allowed the paramedics to take the WRAP off NAPOLES' body only after the paramedics confirmed that he was not breathing. Even after knowing that NAPOLES was under cardiac arrest, Defendants FEALY AND ROSALL continued obstructing the paramedic's job with deliberate indifference to the emergency situation, trying to handcuff the lifeless body of NAPOLES.

63. NAPOLES was eventually taken to a Hospital. The paramedics personnel did their best and were able to bring his pulse back, although his condition was critically serious and the risk of NAPOLES death remained high. He died the next day.

64. During the time that NAPOLES was at the emergency room, DEFENDANT DEPUTY RONALD BUSHNELL, was more concerned and preoccupied to try to obtain blood samples from NAPOLES' body rather than being concerned for the safety of NAPOLES. DEFENDANT DEPUTY RONALD BUSHNELL unconstitutionally and without a warrant collected what he purportedly reported later to be blood samples of NAPOLES. Upon being confronted by a nurse who told Defendant BUSHNELL that he was not authorized to collect any blood without consent or a warrant, Defendant indicated that he would take blood anyway and he could seek and obtain a warrant after taking NAPOLES´ blood with him.

65. Upon information and belief Defendant BUSHNELL violated 4th amendment constitutional rights of NAPOLES. A subsequently obtained warrant does not make DEFENDANT BUSHNELL conduct less wrong or less unconstitutional.

66. NAPOLES died on the next day at the hospital despite the great efforts of the Doctors and nurses treating him. The CAUSE OF DEATH as determined by SAN DIEGO COUNTY medical examiner's department was SUDDEN CARODIOPULMONARY ARREST ASSOCIATED WITH PHYSICAL EXERTION DURING LAW ENFORCEMENT RESTRAINT AND METHAMPHETAMINE INTOXICATION.

67. At the time of the incidents complained above, Defendant SHERIFF GORE was the Sheriff of the County of San Diego. Defendant SHERIFF GORE is an official policy maker for Defendant County of San Diego, in regards to law enforcement policies. He is the person in charge to implement those policies in furtherance of public safety of the people of the State of California & County of San Diego. SHERIFF GORE has taken an oath as Sheriff of San Diego County to uphold the Constitution of the United States , and has publicly embraced a noble commitment to provide the "highest quality public safety service to the County of San Diego". As to the circumstances of this case, public safety has failed utterly.

68. DEFENDANT SHERIFF GORE AND COUNTY knew and should have known of the unconstitutional and deadly practices of their Deputies such as;

   a) The unreasonable use of force and the unreasonable use of taser at close range in the chest and back of individuals unjustifiably and unnecessarily.

   b) The unreasonable use of air choke hold force techniques used by San Diego County Sheriff Deputies unnecessarily creating a risk of death.

   c) The unreasonable use of force by applying body weight and kneeing on top of non combative individuals which have been handcuffed and lie on the ground. Creating unnecessary risk of death by positional asphyxia.

   d) The unreasonable use of force by application of the extreme restraint method device called " THE WRAP " by his San Diego Sheriff Deputies. The practice causes unnecessarily risk of death as it is used even on injured and unconscious individuals with difficulty to breath causing wrongful death.

69. DEFENDANT SHERIFF GORE and COUNTY have ratified all the unconstitutional practices stated above. Upon information and belief, other people have died before and after NAPOLES because of these practices. Despite the above, Defendant Sheriff GORE and COUNTY have taken no action to prevent these unconstitutional practices which may continue to result in other Deaths. None of the Deputies involved in this case have been disciplined at all.

70. DEFENDANTS SHERIFF GORE AND COUNTY knew or should have known that these practices are dangerous to the community and can result in death and violations to the United States Constitution. Therefore, the ratifying conduct as policy makers and implementers of unconstitutional practices by omission, makes proper the alleged liability under 42 U.S.C. 1983

## FIRST CLAIM FOR RELIEF
Substantive Due Process- Interference with familial relationship
(Fourteenth Amendment – 42 U.S.C. § 1983)
(By Plaintiff Dolores Rosales against all defendants)

71. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

72. Decedent and Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that unlawfully interfere with their familial relationship as mother and son.

73. The conduct and acts of all the Defendants were undertaken under the color of law.

74. By the foregoing events of unreasonable force, and the denial of adequate and prompt medical care to the Decedent, Defendants caused an unnecessary Death. And in so doing, unlawfully interfered with the familial relationship between Plaintiff and her now dead son Marco Napoles.

75. Plaintiff has therefore been deprived of the life-long love, companionship, comfort, education, support, society, care, financial support, and sustenance of DECEDENT, and will continue to be so deprived of all of the above including life necessaries such as shelter, food, medical care for the remainder of her natural life.

76. As a direct and legal result of Defendants  unreasonable use of force, and deliberate indifference to risk of death, Decedent and plaintiff were deprived of their constitutional  right to their familiar relationship.

77. DEFENDANTS acted and / or failed to act knowing or when they reasonably should have known that their unconstitutional acts and or omissions would cause Decedent and plaintiff to suffer  irreparable harm.

78. The conduct of Defendants was willful, wanton, malicious, and done with deliberate disregard for the rights and safety  of DECEDENT and Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

79. Plaintiff brings this claim in her individual capacity and as successor in interest to Decedent and seeks exemplary and general and wrongful death damages. Plaintiff also seeks costs and attorney fees under this claim pursuant 42 U.S.C. 1988.

### SECOND CLAIM FOR RELIEF
Unreasonable Search and Seizure—Excessive use of Force
(Fourth and Fourteenth Amendment—42 U.S.C. § 1983)
(By Plaintiff Dolores Rosales against DEFENDANTS YORK, DELIMA, FIELSTRA, MCCORMICK, ADAMS, PEREZ,

80. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

81. The Fourth Amendment to the US Constitution as applied to State Actors by the 14th Amendment provides the right of every person to be free from the use of excessive force by Sheriff Deputies and State Agents. Defendants deprived DECEDENT of his right to be free from excessive use of force when force was used against him on the at least 3 main incidents of unreasonable use of force as described and identified above. Including but not limited the use of ; Physical Force, taser, carotid arteria -air choke hold, asphyxia by body weight, and a WRAP device.

82. As result of Defendant's wrongful misconduct and excessive use of force, DECEDENT suffered extreme pain and suffering prior to his death. He lost his

life, he lost the enjoyment of the rest of his life. He was just 29 years old. He suffered the loss of his earning capacity and the opportunity to continue providing support to his mother.

83. Plaintiff lost her son, his love, his care, his companionship, comfort, education, support, society, care, financial support, and sustenance.  Plaintiff will continue  to suffer the loss of her son Marco every day of the rest of her life.

84. Plaintiff brings this claim  as successor in interest to Decedent and seeks survival damages for the egregious violations to Decedent's Constitutional Rights.

85. Plaintiff also seeks costs and attorney fees under this claim pursuant 42 U.S.C. 1988.

## THIRD CLAIM FOR RELIEF

Unreasonable Search and Seizure—Denial of medical care and deliberate indifference to a medical emergency with risk of death
(Fourth and Fourteenth Amendment—42 U.S.C. § 1983)
<u>(As to all Defendants )</u>

86. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

87. The Fourth Amendment as applied to state actors by the Fourteenth Amendment protects the rights to adequate medical care and to be free from unconstitutional acts depriving a person including a pretrial detainee or arrestee of medical care and attention in a medical emergency. To the extend that Decedent was placed under a lawful arrest without conceding the legality of such arrest here, Defendants violated DECEDENT'S right to adequate medical care and to be free from punishment prior to conviction. Defendants failed to provide prompt, adequate and due medical care to NAPOLES at a critical time when he was severely injured with risk of death.

88. Decedent was in serious need of medical care and emergency assistance  because he was subject to brutal levels of force by Defendants. Including and not limited to the following; Physical Force, taser, carotid arteria -air choke hold, asphyxia by body weight, and the unreasonable use of a WRAP device. Despite that Decedent begged the Deputies for help on multiple occasions  when he was in serious need of

PLAINTIFF'S COMPLAINT  FOR DAMAGES

emergency treatment, Defendants deliberately chose not to provide neither allow others to provide any adequate and prompt medical care until several minutes after Decedent lost consciousness. Defendants knew or should have reasonably known that immediate medical care here was crucial to save the life of Decedent. Defendants deliberately chose to ignore the emergency & the serious risk of death.

89. After using a taser on multiple times against  NAPOLES the defendants had the legal obligation to procure immediate medical assistance to him in accordance with SDSD own policies and manuals. The evidence shows that instead of providing prompt medical care to  Napoles, the Defendants deliberately engaged in more physical distress and subjected Decedent  to more egregious levels and methods of unreasonable force which ultimately resulted in his death.

90. As a result of Defendants Deliberate Indifference to the serious need for prompt medical assistance, NAPOLES suffered extreme pre-death pain and suffering, and died after his agony. Defendants are liable for the loss of his life and the loss of enjoyment of his life.  NAPOLES  suffered  loss of earning capacity and ability to provide support for his mother.

91. Defendants are liable for DECEDENT and for PLAINTIFF'S injuries because they were an integral participant and/or because they failed to intervene to prevent the violations of DECEDENT'S rights to receive vital emergency care on time.

92. The conduct of Defendant deputies was excessive, unreasonably, willful, wanton, malicious, and done with deliberate and reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary damages.

93. Plaintiff Dolores Rosales brings this claim individually and as successor in interest seeking damages including survival damages for the violation of DECEDENT'S constitutional rights.

# FOURTH CLAIM FOR RELIEF

Municipal Liability—Ratification (42 U.S.C. § 1983) (By Plaintiffs against
Defendants COUNTY and SHERIFF GORE & DOES 11-20 )

94. Plaintiff repeats and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

95. At all times relevant to this complaint, Defendants acted under color of law.

96. The acts of Defendants deprived DECEDENT and Plaintiff of their rights under the United States Constitution.

97. Upon information and belief, at all relevant times, Defendant SHERIFF  GORE was the upper management, supervisory personnel  and final policymaker in chief and policy enforcer in chief, for Defendant COUNTY OF SAN DIEGO during the time of these events.

98. DEFENDANTS COUNTY, SHERIFF GORE and DOES 11-20 have ratified and acquiesced in the acts and constitutional violations committed by the all the Defendants against NAPOLES as alleged above. Although the majority of  the acts and omissions of the acting Deputy Defendants of this case were recorded by audio and video through body cams, surveillance and cellphones, no retraining or disciplinary actions have been taken against any Deputy involved in this case.

99. The unlawful acts and omissions of the Deputy Defendants as perpetrated here against the Decedent, are just part of  series of deaths that have occurred in San Diego County where SDSD Sheriffs Deputies are involved and engage in such practices in violation of the US Constitution. Despite the above, neither Defendant COUNTY nor Defendant  Sheriff GORE, have taken any remedial actions for  re-training or any disciplinary measure concerning the Deputies involved in this death.

100.     Moreover, upon information and belief, Defendants COUNTY and SHERIFF GORE have affirmatively approved the Defendants' actions, first by failing to take remedial actions as stated above, and moreover by publicly supporting the behavior observed by their Sheriff Deputies involved.

101.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pre-death pain and suffering, loss of enjoyment of life, and death.

102.     Accordingly, Defendant COUNTY and DEFENDANT SHERIFF GORE should be liable to the Plaintiff for compensatory damages under 42 U.S.C. § 1983, for their indulgent conduct towards unconstitutional practices that have resulted in death and remain to be a serious risk of future similar deaths to the community of San Diego County if no judicial action is taken.

103.     Plaintiff brings this claim as a successor in interest to DECEDENT and individually and  seeks both survival and wrongful death damages under this claim.

104.     Plaintiff also seeks costs and attorney's fees under this claim pursuant 42 U.S.C. 1988.

### FIFTH CLAIM FOR RELIEF
Municipal Liability—Failure to Train (42 U.S.C. § 1983)
(Against Defendant COUNTY  Defendant SHERIFF GORE, DOES 11-20 )

105.     Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein. The Defendants acted under color of law.

106.     Defendants COUNTY OF SAN DIEGO, and SHERIFF GORE  had deficient and inadequate training policies for its Sheriff's Department Deputies.

107.     A low level call priority -4 being not a threat to anyone resulted in the death of a young man without legal and moral justification.

108.     Defendants COUNTY and SHERIFF GORE should be liable for their failure to properly train the Deputies Defendants involved in the wrongful death of NAPOLES. SDSD Deputies showed by way of their own body cam videos their poor training and the deliberate indifference to NAPOLES' constitutional rights.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

109.     The failure to train is so closely related to the deprivation of the DECEDENT'S and Plaintiff's rights as to being the actual moving force that caused the ultimate death of NAPOLES for the following inadequate training considerations:

   a.  SDSD staff are inadequately trained with respect to the use of force against members of the society and human beings. Inadequately trained also as to methods of restraint allowed and not allowed within SDSD policies.

   b.  SDSD Deputies are inadequately trained with respect to de-escalating risk to engage in use of force in situations involving low level of priority 911 calls

   c.  SDSD Deputies are inadequately trained with respect to handling situations involving subjects who appear to have a medical condition or some form of personal situation causing anxiety, nervousness or fears to an otherwise normal person.

   d.  SDSD staff are inadequately trained to summon immediate medical care for detainees in serious need for medical emergency care after use of force.

   e.  SDSD staff are inadequately trained to summon medical care for a detainee, or have a detainee medically evaluated, who has been subject to the use of taser, especially when used excessively and unjustifiably in many occasions.

   f.  SDSD staff are inadequately trained as to the use of the ¨WRAP¨ device on injured individuals requiring immediate emergency medical care.

113.     By reason of the aforementioned failure to train and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future financial support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pre-death pain and suffering, loss of enjoyment of life, and death.

114.     Accordingly, Defendant COUNTY is liable to the Plaintiff for compensatory damages under 42 U.S.C. § 1983.

115.     Plaintiff brings this claim as a successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim.  Plaintiff also seeks costs and attorney's fees under this claim.

### SIXTH CLAIM FOR RELIEF
Municipal Liability—Unconstitutional Custom or Policy (42 U.S.C. § 1983)
(Against Defendants COUNTY and SHERIFF GORE and DOES 11-20)

117.     Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

118.     The individual Defendants acted under color of law.

119.     Upon Plaintiff's information and belief on or about August 16 2018, and for at least five years prior to this deadly incident, Defendants COUNTY OF SAN DIEGO, SHERIFF GORES and DOES 11-20, have established, maintained, applied and allowed a custom, policy and practice of using and permitting the use of unnecessary and unreasonable force by;

a)  Condoning peace officers code of silence through the SD Sheriff Department.

b)  Failing to discipline officers who engage in the use of unnecessary unreasonable force resulting in injury or death.

c)  Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessary and  unreasonable force.

d)  Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessarily and excessively  their taser guns.

e)  Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessarily and dangerously the WRAP.

f)  Failure to adequately supervise and to train deputies in a manner that is safe and consistent with civil police forces.

120.     By reason of the aforementioned customs and practices, Plaintiff have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future financial support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT'S pre-death pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendant COUNTY and SHERIFF GORE shall be liable to the Plaintiff for compensatory damages under 42 U.S.C. § 1988.Plaintiff DOLORES ROSALES brings this claim individually and as a successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim.

**SEVENTH CLAIM FOR RELIEF**
Negligence (Cal. Govt. Code § 820 and California Common Law)
(Wrongful Death)
(By Plaintiff against ALL Defendants in this complaint)

121.     Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

122.     The actions and inactions of Defendants were negligent and reckless, including but not limited to:

a. The negligent use of unreasonable force against NAPOLES on several occasions and for a long period of time causing ultimately his death. Including but not limited to physical force, taser, carotid arteria -air choke hold, positional asphyxia by application of body weight, the WRAP device.

b. The negligent handling of the situation with DECEDENT, including, but not limited to, negligently making use of a taser upon DECEDENT on several times, to both chest and back and by shooting mode and stun mode.

c. The negligent tactics and handling of the situation with DECEDENT, including, negligently placing the DECEDENT in the ¨WRAP¨ restraint device when he was already unconscious, after being tasered and subject to

PLAINTIFF'S COMPLAINT FOR DAMAGES

air choke hold restraints and other methods of force in multiple occasions, all instead of medically evaluating and providing emergency medical care.

d. The negligent failure to medically evaluate him while he was having a medical emergency and going through medical distress as clearly seen on the video recordings.

e. The negligent failure to render timely medical aid to the decedent when he was in a state of medical emergency and distress.

f. The negligent failure to allow the paramedics to provide timely medical emergency care to the Decedent.

g. The negligent training and failure to train SDSD sheriffs on the issues and topics set forth above in this complaint.

139.  As a direct and proximate result of Defendants' negligence, DECEDENT died and Plaintiff was deprived of the life-long love, companionship, comfort, support, society, care and sustenance of her son, and will continue to be so deprived for the remainder of her natural life.

140.  COUNTY is vicariously liable for the wrongful acts of its employees pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

141.  The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the Plaintiff and DECEDENT, entitling the Plaintiff, individually and as successor-in-interests to DECEDENT to an award of exemplary damages in the interest of justice.

142.  Plaintiff seeks wrongful death and survival damages under this claim. Plaintiffs also seek costs, interest and attorneys' fees under §1021.5.

## EIGHT  CLAIM FOR RELIEF
Violation of Bane Act (Cal. Civil Code §52.1 and California Common Law)
(Plaintiff against ALL Defendants in this complaint)

143.    Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

144.    Defendants used objectively  unreasonable force against the DECEDENT and used violence, intimidation, threats, including techniques specifically intended to threat, to cause intimidation, coercion , to cause pain, suffering, and the ultimately to cause death of the DECEDENT in violation of his rights under the US Constitution, under The California State Constitution, and under fundamental concepts of human rights.

145.    DECEDENT was subject to cruel suffering and agony  losing  his very young life to no reason. The conduct of  Defendants was a substantial factor in causing  DECEDENT'S DEATH. Thus, they should be liable for the death caused.

146.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT. Plaintiff seeks remedies by  award of exemplary damages, except as to the COUNTY.

147.    Plaintiff brings this claim  in her capacity as successor in interest to the decedent and seeks survival damages under this claim.  Plaintiff also seeks costs, interest, and attorneys' fees under §52.1 and §1021.5.


## NINTH CLAIM FOR RELIEF
False Imprisonment- Under CA Claim
(By Plaintiff against DEFENDANTS YORK, DELIMA AND FIELSTRA)

123.    Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

124.    Defendants YORK, DELIMA AND FIELSTRA  by intentional acts with the use of force confined Decedent into a bounded area by the use of unreasonable force causing damages resulting in Death without legal justification.

125.     NAPOLES was a licensee at the commercial premises of the Gas Station. Upon Defendant YORK's  request to leave NAPOLES complied and left. At the time when Defendant YORK approached NAPOLES for a second time, NAPOLES  was walking towards the sidewalk area of the Gas Station which is public property not private. Defendants conduct  was a substantial factor in causing the death of DECEDENT and damages to Plaintiff.

126.     Plaintiff seeks both survival and wrongful death damages under this claim, as well as costs, interest, and attorneys' fees under §1021.5.

127.     COUNTY is vicariously liable for the wrongful acts of its employees pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.


**TENTH CLAIM FOR RELIEF**
Battery (Cal. Govt. Code § 820 and California Common Law)
(Wrongful Death)
(By Plaintiff against all Defendants except COUNTY and SHERIFF GORE)

128.     Plaintiff repeats and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

129.     Defendants used excessive and unreasonable force against  NAPOLES on several occasions as pleaded above to which NAPOLES  did not consent and which caused NAPOLES' death.

130.     As a direct and proximate result of Defendants' conduct as alleged above, the Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care, financial support, and sustenance of her loving son NAPOLES,  and she will continue to be so deprived for the remainder of her natural life. The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff and

DECEDENT, entitling the Plaintiff, individually and as successor-in-interests to DECEDENT, to an award of exemplary damages.

131.    Plaintiff seeks wrongful death and survival damages under this claim, as well as costs, interest, and attorneys' fees under §1021.5.   Plaintiff was financially dependent on DECEDENT.

132.    COUNTY is vicariously liable for the wrongful acts of its employees pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## ELEVENTH CLAIM FOR RELIEF
Unreasonable Search and Seizure—Take of blood without consent or warrant
(Fourth and Fourteenth Amendment—42 U.S.C. § 1983)
<u>(As to DEFENDANTS BUSHNELL, COUNTY AND SHERIFF GORE)</u>

110.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

111.    The Fourth Amendment as applied to state actors by the Fourteenth Amendment, protects the rights of the person to be protected from unreasonable searches and seizures. Defendant BUSHNELL without consent and without a warrant alleges to have obtained blood samples of the body of Plaintiff's son before he died at the hospital. To the extend the samples of blood in fact pertain to the now deceased NAPOLES, any samples obtained while he was  alive without his consent and without a warrant should be considered the fruit of a poisonous tree vitiated with the flagrant unconstitutionality of Defendant's acts . The Conduct of Defendant BUSHNELL offends the fundamental notions of the 4th Amendment and the 14th Amendment, and it is the legal cause to Decedent and Plaintiff's harms.

112.     Plaintiff brings this claim as successor in interest seeking damages including survival damages for the violation of DECEDENT'S Fourth and Fourteen Amendment rights under the United States of America Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request entry of judgment in her favor and against the Defendants as follows:

•     For compensatory damages against all Defendants, including both survival damages (pre-death pain and suffering under the federal survival claims and loss of life and loss of enjoyment of life under the federal and state survival claims) and wrongful death damages under federal and state law, in an amount to be proven at trial;

•     For loss of financial support;

•     For funeral and burial expenses;

•     For exemplary and punitive damages against the individual defendants in an amount to be proven at trial;

For pre- and post-judgment interest at the maximum legal rate;

•     For reasonable costs of this suit and attorneys' fees pursuant to; 42 U.S.C. §1988, §52.1, and §1021.5; and

•     For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted by:

Date: December 02, 2019                          s/Jesus Eduardo Arias Esq. LL. M.
                                                                        Attorney for Plaintiff
                                              Email:   jearias@jesuseduardoarias.com

PLAINTIFF'S COMPLAINT FOR DAMAGES