1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DOLORES ROSALES, | Case No.:  19-CV-2303 JLS (LL) |
| 12                                   Plaintiff, | |
| 13  v. | **ORDER: (1) GRANTING IN PART AND DENYING IN PART THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS,** |
| 14  COUNTY OF SAN DIEGO; SHERIFF WILLIAM D. GORE, an individual; | |
| 15  DEPUTY TERENCE YORK, an individual; DEPUTY BRANDON | **(2) DENYING THE INDIVIDUAL DEFENDANTS' MOTION TO STRIKE, AND (3) GRANTING IN PART AND DENYING IN PART THE COUNTY AND SHERIFF GORE'S MOTION TO DISMISS** |
| 16  DELIMA, an individual; DEPUTY EVAN MCCORMICK, an individual, DEPUTY | |
| 17  NICHOLAS ADAMS, an  individual; DEPUTY ERIC COTTRELL, JR., an | |
| 18  individual, DEPUTY CARL FIELSTRA, an individual; DEPUTY BRIAN | |
| 19  SCHAEFER, an individual; DEPUTY CHRISTOPHER PEREZ, an individual; | (ECF Nos. 14, 20) |
| 20  SERGEANT DWAIN WASHINGTON, an individual, DEPUTY RONALD | |
| 21  BUSHNELL, an individual; DEPUTY STEVEN FEALY, an individual; | |
| 22  DEPUTY SCOTT ROSALL, an individual; and DOES 1 through 50, | |
| 23  inclusive, | |
| 24 | |
| 25 | |
| 26 | |
| 27                                   Defendants. | |
| 28 | |

Presently before the Court is Defendants Terence York; Brandon Delima; Evan McCormick; Nicholas Adams; Eric Cottrell, Jr.; Carl Fielstra; Brian Schaefer; Christopher Perez; Dwain Washington; Ronald Bushnell; Steven Fealy; and Scott Rossall's (collectively, the "Individual Defendants") Motion to Dismiss Plaintiff's Complaint and to Strike Portions Thereof ("Indiv. Mot.," ECF No. 14), as well as Plaintiff Dolores Rosales' Response in Opposition to ("Indiv. Opp'n," ECF No. 15) and the Individual Defendants' Reply in Support of ("Indiv. Reply," ECF No. 16) the Individual Motion.  Also before the Court is Defendants County of San Diego (the "County") and Sheriff William D. Gore's ("Sheriff Gore") (collectively, the "County Defendants") Motion to Dismiss Plaintiff's Complaint ("Cty. Mot.," ECF No. 20), as well as Plaintiff's Response in Opposition to ("Cty. Opp'n," ECF No. 21) and the County Defendants' Reply in Support of ("Cty. Reply," ECF No. 23) the County Motion.

The Court took these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF Nos. 17, 22.  Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law, the Court **GRANTS IN PART AND DENIES IN PART** the Individual Defendants' Motion to Dismiss, as set forth below; **DENIES** the Individual Defendants' Motion to Strike; and **GRANTS IN PART AND DENIES IN PART** the County Defendants' Motion to Dismiss, as set forth below.

## BACKGROUND

Plaintiff brings suit both individually and on behalf of her son, Marco Napoles, as his successor in interest, against all Defendants.  *See* Compl. ¶¶ 6–9.  Specifically, as to the Individual Defendants, or a subset of them, Plaintiff brings four federal claims under Section 1983 of Title 42 of the United States Code for violations of Plaintiff and Napoles' constitutional rights under the Fourth, Eleventh, and Fourteenth Amendments.  *See* Compl.

/ / /

/ / /

/ / /

¶¶ 71–93 (claims one through three), ¶¶ 110–12 (claim eleven).[1]  Plaintiff also alleges four claims under California law against the Individual Defendants, or some of them, for negligence; violation of the Tom Bane Civil Rights Act, Cal. Civ. Proc. Code § 52.1 (hereinafter the "Bane Act"); false imprisonment; and battery.  *See id.* ¶¶ 121–32 (claims seven through ten).  Additionally, Plaintiff brings six federal claims under Section 1983 against the County Defendants, *see id.* ¶¶ 71–79 (claim one), ¶¶ 86–120 (claims three through six), ¶¶ 110–12 (claim eleven); and two claims against the County Defendants under California law for negligence and violation of the Bane Act, *see id.* ¶¶ 121–47 (claims seven and eight).

## I.   Plaintiff's Allegations[2]

On August 16, 2018, Napoles' vehicle broke down, prompting Napoles to walk to a gas station in Fallbrook, California.  *See* Compl. ¶ 28.  Upon arriving at the gas station, Napoles entered the gas station's convenience store, where an employee allowed him to charge his cell phone.  *See id.* ¶ 30.  Napoles was at the gas station from around 2 a.m. to around 4 a.m., chatting with customers and convenience store employees.  *See id.* ¶¶ 30, 32.

At around 4:30 a.m., a new employee, presumably the gas station's manager, arrived and requested that Napoles wait outside near the gas pumps or parking area.  *See id.* ¶ 32.  Napoles went outside, *see id.*, but would go back inside the store periodically, presumably to check his charging cell phone.  *See id.* ¶ 33.  The manager then called the police to report a customer—Napoles—that "'was just standing in the store and not leaving after being told

---

[1] The Court will use the paragraph numbers appearing in Plaintiff's Complaint but notes that there is a numbering issue, and accordingly some paragraph numbers correspond to multiple paragraphs.  *See generally* ECF No. 1.

[2] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the present Motions.  *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").  Plaintiff also submitted video footage as an exhibit to her Complaint.  *See generally* ECF No. 5 ("Ex. 1").  The Individual Defendants' Motion to Strike this exhibit is addressed *infra* at 29–31.

to leave.'"  *Id.*  The manager informed the dispatch operator that she was unaware of any weapons in the customer's possession.  *See id.*

At approximately 4:50 a.m., San Diego County Sheriff's ("SDS") Deputy Terence York arrived at the gas station.  *See id.* ¶ 35.  Deputy York approached Napoles near the gas pumps, where Napoles informed Deputy York of Napoles' broken-down vehicle.  *See id.*  Napoles then provided Deputy York with his California identification card, which Deputy York used to check Napoles' record, learning that Napoles had no criminal record. *See id.* ¶ 36.  Deputy York allowed Napoles to use Deputy York's cell phone to call friends or family to pick him up.  *See id.* ¶ 37.

Deputy York denied Napoles' request to continue to wait near the gas pumps and told Napoles to leave the gas station, because the manager did not want him anywhere near the store.  *See id.* ¶¶ 40–41.  Napoles walked around the corner, and Deputy York went back inside his patrol vehicle.  *See id.* ¶ 41.  Several minutes after Napoles left, Deputy York observed Napoles again walking near the gas pumps, presumably toward the adjacent sidewalk.  *See id.* ¶ 42.  Deputy York approached Napoles, commanded Napoles to remove his backpack in a raised voice, and attempted to submit Napoles by pulling his arm.  *See id.*

While this was happening, SDS Deputy Brandon Delima arrived on the scene, and Deputy Delima assisted Deputy York with throwing Napoles to the ground while both deputies yelled at Napoles to "'stop resisting.'"  *Id.* ¶ 43.  A third SDS deputy, Deputy Carl Fielstra, approached to assist Deputies York and Delima.  *See id.*  After throwing Napoles to the ground, Deputies York, Delima, and Fielstra "plac[ed] their bodies on top of Napoles" and "deliberately hit him with punches."  *Id.* ¶ 44.  Napoles was unarmed and nonviolent.  *See id.*  He asked the deputies for help and requested that they stop using force. *See id.*  Instead, Deputy Delima deployed his Taser into Napoles "[a]pproximately more than [six] times, to his chest and to his back," on both dart mode and drive-stun mode.  *Id.* ¶¶ 44–45.  Napoles screamed for help and asked the deputies to stop tasing him.  *See id.* ¶ 45.  The deputies' body cams fell off and ended up pointing away from the scene during

the incident while continuing to record audio, but a bystander recorded part of the incident on a cell phone. *See id.*; *see also id.* Ex. 1.

Deputy York claimed to have been bitten on his thumb by Napoles. *See id.* ¶ 46. Napoles denied biting him. *See id.* ¶ 47. On information and belief, Plaintiff alleges that Deputy York had been bitten several days earlier by a dog that he was training as a K9 officer. *See id.* Napoles, now handcuffed,[3] began yelling, "'please help me… please call 911, please help… they are going to kill me.'" *See id.* ¶ 48. Deputies York, Delima, and Fielstra then requested additional deputies and a WRAP restraint device. *See id.* ¶ 49. Deputies York, Delima, and Fielstra ignored Napoles' pleas for help. *See id.*

SDS Deputy Evan McCormick responded to the request for backup, and, when he arrived at the scene, he applied "all of his body weight upon [Napoles'] body," "applying intense pressure with his knees and his 300 pounds body weight" to Napoles' chest. *Id.* ¶ 50. Deputy McCormick then used an air choke hold force technique on Napoles that put pressure on the carotid artery, obstructing Napoles' ability to breathe and causing him "excruciating pain." *Id.* ¶¶ 50–51. Napoles asked for help multiple times and said, "'Excuse me, I need to stand up,'" and "'I am f…… dying.'" *Id.* ¶ 52. Napoles lost consciousness moments after Deputy McCormick initiated the choke hold. *See id.* ¶ 53. Nonetheless, Deputy McCormick shouted at him to "stop resisting." *Id.*

SDS Deputies Nicholas Adams, Christopher Perez, Brian Schaefer, and Eric Cottrell, Jr., arrived on the scene and, along with Deputies McCormick and Delima, "plac[ed] their body weight on top of [Napoles'] body." *See id.* ¶ 54. "Napoles had at some point [four] deputies using their knees and bodies on top of him" before they started to apply the WRAP restraint device. *Id.* SDS Sergeant Dwain Washington was present on the scene for Deputy McCormick's carotid artery choke hold and the deputies' subsequent application of the WRAP device but did nothing to intervene or stop the deputies. *See id.* ¶ 58.

---

[3] Plaintiff's Complaint does not specify who handcuffed Napoles or when.

Paramedics from the North County Fire Protection District arrived on the scene to treat Deputy York and asked the deputies if Napoles needed medical assistance and if they could evaluate his medical condition. *See id.* ¶ 59. The deputies did not allow the paramedics to evaluate Napoles without the WRAP device. *See id.* ¶ 60. Deputy McCormick placed a spit bag over Napoles' head before paramedics placed Napoles in the ambulance. *See id.* ¶ 61. SDS Deputies Steven Fealy and Scott Rossall boarded the ambulance and "did not allow the paramedics to medically evaluate and treat Napoles unrestrained." *Id.* ¶ 62. Deputies Fealy and Rossall allowed paramedics to remove the WRAP device "only after the paramedics confirmed that [Napoles] was not breathing." *Id.* Deputies Fealy and Rossall tried to handcuff Napoles while Napoles was experiencing a cardiac arrest. *See id.*

At the hospital, the paramedics were able to get Napoles' pulse to return, but he was in "critically serious" condition. *Id.* ¶ 63. While Napoles was in the emergency room, SDS Deputy Ronald Bushnell collected blood samples from Napoles, without a warrant or Napoles' consent. *See id.* ¶ 64. A nurse confronted Deputy Bushnell, but he said "he would take blood anyway and he could seek and obtain a warrant after." *Id.*

Napoles died the next day. *See id.* ¶ 66. The San Diego County Medical Examiner determined Napoles died because of "sudden cardiopulmonary arrest associated with physical exertion during law enforcement restraint and methamphetamine intoxication." *Id.* (emphasis omitted). Plaintiff, a resident of Tijuana, Mexico, was dependent upon her son at the time of his death for shelter, food, medical care, and other necessities. *See id.* ¶ 9.

## II.    Procedural Background

On December 3, 2019, Plaintiff filed her Complaint, *see* ECF No. 1, and sought leave to lodge Exhibit No. 1, a video recording, to her Complaint. *See* ECF No. 3. The Court granted Plaintiff's request, *see* ECF No. 4, and Plaintiff lodged Exhibit No. 1 in USB format with the Court, *see* ECF No. 5.

/ / /

On December 30, 2019, the County Defendants filed a motion for security costs. *See* ECF No. 8.  Subsequently, the Parties moved jointly for an extension of time for the County Defendants to respond to the Complaint, *see* ECF No. 12, which the Court granted, *see* ECF No. 13.

On May 1, 2020, the Individual Defendants filed the instant Motion to Dismiss and Strike.  *See* ECF No. 14.  On September 9, 2020, the Court denied the County Defendants' motion for security costs.  *See* ECF No. 19.  The County Defendants filed their own Motion to Dismiss on September 23, 2020.  *See* ECF No. 20.

## LEGAL STANDARDS

## I.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**I.    Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)).  "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D.

Cal. 1991).  "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader.'"  *Id.* (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

"Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings."  *Roe v. City of San Diego*, 289 F.R.D. 604, 608 (S.D. Cal. 2013) (citing Fed. R. Civ. P. 15(a)(2); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979)).

## THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Plaintiff brings two Section 1983 claims—the first for interference with familial relationship and the second for denial of medical care—against all the Individual Defendants; a third Section 1983 claim for excessive use of force against Deputies York, Delima, Fielstra, McCormick, Adams, and Perez; and a fourth Section 1983 claim for unreasonable search and seizure against Deputy Bushnell.  *See generally* Compl.

To state a claim under Section 1983, a plaintiff must allege both that (1) the defendant was acting under color of state law at the time the complained of act was committed,[4] and (2) the defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).  Under Section 1983, a defendant deprives another of a constitutional right if the defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis and alterations in original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Id.*

---

[4] The Individual Defendants do not contest that were acting under color of state law at the time the complained of acts were committed; accordingly, the Court will accept as true and adequate Plaintiff's allegations that the Individual Defendants acted under color of law and within the scope of their employment.  *See, e.g.*, Compl. ¶¶ 12–23, 72.

19-CV-2303 JLS (LL)

Additionally, Plaintiff brings state law claims for negligence, violation of the Bane Act, and battery against all the Individual Defendants, as well as a state law claim for false imprisonment against Deputies York, Delima, and Fielstra.  *See generally* Compl.

The Individual Defendants seek dismissal of all claims asserted against Sergeant Washington for failure to adequately allege his individual liability.  *See* ECF No. 14-1 ("Indiv. Mot. Mem.") at 14–15.  The Individual Defendants also seek to dismiss Plaintiff's first three claims—the Section 1983 claims for interference with familial relationship, denial of medical care, and excessive force—both for failure to state a claim and on the basis of qualified immunity.  *See id.* at 5–13.[5]  The Court will address each of these arguments in turn.

## I.    Claims Against Sergeant Washington

### A.    *Federal Claims*

Plaintiff brings two Section 1983 claims against Sergeant Washington: interference with familial relationship and denial of medical care.  *See* Compl. ¶¶ 71–85.  The Individual Defendants argue that Plaintiff fails to allege sufficient facts to bring these claims under supervisory liability.  *See* Indiv. Mot. Mem. at 14.  Plaintiff's Opposition does not squarely address this argument, only alleging that Sergeant Washington "knew that due process required him and his subordinate deputies to seek immediate and proper medical care to Napoles," but that he "deliberately chose to ignore that."  Indiv. Opp'n at 21.  The Individual Defendants argue that this assertion is too conclusory to establish supervisory liability pursuant to Section 1983.  *See* Indiv. Reply at 3–4.  The Court agrees with the Individual Defendants.

A plaintiff may hold supervisors individually liable in a Section 1983 suit when "culpable action, or inaction, is directly attributed to them."  *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  The supervisor's liability could be based on the supervisor's: (1)

---

[5] The Court notes that the Individual Defendants do not seek to dismiss the state law claims against the remaining Individual Defendants or the eleventh claim for unreasonable search and seizure against Deputy Bushnell.  *See generally* Indiv. Mot. Mem.  Accordingly, this Order does not address these claims.

19-CV-2303 JLS (LL)

"own culpable action or inaction in the training, supervision, or control of his subordinates"; (2) "acquiescence in the constitutional deprivations of which the complaint is made"; or (3) "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1978).  To impose such supervisory liability, a plaintiff must plead: (i) detailed factual allegations that "give fair notice" in order to "enable the opposing party to defend itself effectively," and (ii) a theory of liability through these detailed allegations that "must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1205–06.

Here, Plaintiff has failed to allege any specific and non-conclusory facts showing that Sergeant Washington personally participated in the alleged violations of Plaintiff or Napoles' constitutional rights.  Further, Plaintiff's allegations that Sergeant Washington "did nothing to stop his Deputies from engaging in the wrongful conduct," *see* Compl. ¶ 58, are not adequate to state a claim for supervisory liability under Section 1983.  *See Victoria v. City of San Diego*, No. 17-CV-1837-AJB-NLS, 2019 WL 4643713, at *5 (S.D. Cal. Sept. 23, 2019) (holding that allegations that the defendant supervisor knew of the violations of constitutional rights and failed to act to prevent them were insufficient to survive a motion to dismiss).  Accordingly, the Court finds that Plaintiff has failed to state any claims against Sergeant Washington under Section 1983.

### B.    State Law Claims

Additionally, Plaintiff brings state law claims for negligence, battery, and violation of the Bane Act against Sergeant Washington.  *See* Compl. ¶¶ 121–47 (claims seven and eight), ¶¶ 128–32 (claim ten).  Again, the Individual Defendants argue that Plaintiff fails to allege sufficient facts for these state law claims.  *See* Indiv. Mot. Mem. at 15.  Again, Plaintiff does not directly counter the Individual Defendants' argument.  *See generally* Indiv. Opp'n.  The Court agrees with the Individual Defendants that Plaintiff's state law claims against Sergeant Washington are deficient.

/ / /

An adequately pleaded claim for negligence requires allegations of duty, breach, causation, and damages. *Alexander v. Diaz*, No. 20cv100-CAB-KSC, 2020 WL 2794546, at *6 (S.D. Cal. May 29, 2020) (citing *Hayes v. Cty. Of San Diego*, 305 P.3d 252, 255 (Cal. 2013)). The Complaint does not plead facts alleging a duty, the breach thereof, or causation, much less make any such allegations specifically as to Sergeant Washington. Thus, Plaintiff fails to state a claim for negligence against him.

To state a claim for battery under California law, a plaintiff must allege that "the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person." *See Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2006) (listing the elements of battery under California law). Here, Plaintiff has not alleged that Sergeant Washington intentionally undertook any act that resulted in harmful or offensive contact with Napoles' person, and thus she has failed to state a claim for battery as to him.

Finally, "[t]he Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1239 (2007)). Plaintiff has not alleged that Sergeant Washington has interfered with rights secured by federal or state law via threats, intimidation, or coercion. Accordingly, Plaintiff has failed to plead sufficient facts to allege a violation of the Bane Act as to Sergeant Washington.

### C.   Conclusion

Because Plaintiff fails to plead facts sufficient to state a claim against Sergeant Washington, the Court **GRANTS** the Individual Defendants' Motion to Dismiss Plaintiff's first, third, seventh, eighth, and tenth claims as to Sergeant Washington. Because it is not clear from the pleadings, however, that Plaintiff cannot cure the deficiencies identified above, the Court **DISMISSES** these claims **WITHOUT PREJUDICE**.

/ / /

/ / /

## II.   Section 1983 Claims Against the Remaining Individual Defendants

As an initial matter, the Individual Defendants correctly note that Plaintiff may not bring her Section 1983 claims on Napoles' behalf pursuant to the Fourteenth Amendment. *See* Indiv. Mot. Mem. at 5 n.3.  To the extent Plaintiff's second, third, and eleventh claims, premised on unreasonable search and seizure, are brought on behalf of Napoles, they must proceed under the Fourth Amendment only.  *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").[6]

As to Plaintiff's first claim for interference with familial relationship, while "parents have a Fourteenth Amendment liberty interest in the companionship and society of their children," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citation omitted), "prior to his death, Decedent could not have had a cognizable claim for interference with familial relations."  *Hermosillo v. Cty. of Orange*, No. SACV201387JVSADSX, 2020 WL 6785303, at *5 (C.D. Cal. Oct. 15, 2020).  Accordingly, to the extent Plaintiff purports to bring claims one, two, three, and eleven on Napoles' behalf under the Fourteenth Amendment, such claims are **DISMISSED WITH PREJUDICE**.  In light of this, the first claim, which is only asserted under the Fourteenth Amendment, is now brought only by Plaintiff in her individual capacity.

### A.   Claim 1: Interference with Familial Relationship

Plaintiff brings a Section 1983 claim for interference with familial relationship against all the remaining Individual Defendants.  Plaintiff alleges that the Individual Defendants caused Napoles' death, depriving Plaintiff of her parent-child relationship guaranteed under the Fourteenth Amendment.  *See* Compl. ¶¶ 72–75.

/ / /

---

[6] The practical effect of this is likely negligible, as for these claims, "the reference to the Fourteenth Amendment appears to be an unnecessary reference to the incorporation doctrine." *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1257 (E.D. Cal. 2014) (citations omitted).

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (internal citations, quotations, and alterations omitted). To plead such a substantive due process claim requires a plaintiff to allege the liberty deprivation was caused by the government "in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *see also Luis v. Cty. of San Diego*, No. 318-cv-0246-CAB-(JMA), 2018 WL 1920323, at *6 (S.D. Cal. Apr. 24, 2018) ("[T]o prevail on a Fourteenth Amendment claim arising out of the loss of familial relationship, a plaintiff must show that the defendant's conduct shocks the conscience.") (quoting *Schwartz v. Lassen Cty. ex rel. Lassen Cty. Jail*, No. 210-cv-03048-MCE-CMK, 2013 WL 5375588, at *5 (E.D. Cal. Sept. 24, 2013)).

The Individual Defendants argue that Plaintiff fails to allege that the Individual Defendants acted with requisite purpose to harm, or how each Individual Defendant's conduct deprived Plaintiff of her constitutional right. *See* Indiv. Mot. Mem. at 6.

To determine whether the alleged actions shock the conscience, a court must first ask "whether the circumstances are such that actual deliberation is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998) (internal quotation marks omitted)). If the situation's circumstances allow for actual deliberation, the defendant's "deliberate indifference" may suffice to shock the conscience. *Id.* Conversely, where the situation requires the defendant to make repeated snap judgments in response to an escalating situation, the defendant must have acted with a purpose to harm unrelated to legitimate law enforcement objectives in order to shock the conscience. *Id.* at 1140. "The 'purpose to harm' standard applies when the official 'encounters fast paced circumstances presenting competing public safety obligations,' such as when police officers are in high speed car chases or situations with active shooters." *Dees v. Cty. of San Diego*, No. 314-cv-0189-

BEN-DHB, 2017 WL 168569, at *3 (S.D. Cal. Jan. 17, 2017) (quoting *Porter*, 546 F.3d at 1139).

The Individual Defendants argue that the "purpose to harm" standard should apply, as "once Napoles' evasive and defiant actions began, the responding officers had to react quickly to detain him for trespassing." Indiv. Mot. Mem. at 7. Plaintiff claims that the relevant standard is "deliberate indifference," given that the Individual Defendants "had a reasonable and sufficient opportunity for practical deliberation of their conduct *a priori*." Indiv. Opp'n at 22. The Court concludes, based on the allegations contained in the Complaint, that the "deliberate indifference" standard applies here.

Plaintiff alleges that the Individual Defendants responded to a call of a nonthreatening, unarmed trespasser, *see* Compl. ¶¶ 33–35, and that the suspect was not violent toward the Individual Defendants or anyone else, *see id.* ¶ 44. Based on these allegations, the Court finds this situation falls short of the "fast paced circumstances presenting competing public safety obligations" that would require showing that the Individual Defendants acted with a purpose to harm. *Porter*, 546 F.3d at 1139 (holding that "purpose to harm" standard applied when suspect drove car toward officer); *Moreland*, 159 F.3d at 373 (holding that "purpose to harm" standard applied when officers responded to a gun fight in a crowded parking lot); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998) (holding that "purpose to harm" standard applied in a high-speed automobile chase). Accordingly, Plaintiff need only plead facts indicating that the Individual Defendants acted with deliberate indifference toward Napoles.

Deliberate indifference is a "stringent standard of fault, requiring that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). The law enforcement officer must "recognize[ an] unreasonable risk and actually intend . . . to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996) (internal quotation marks omitted). "Whether [officers] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

from circumstantial evidence . . . and a factfinder may conclude that [an] official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1984).  Thus, this Court must analyze the sufficiency of Plaintiff's factual allegations against each Individual Defendant to determine whether Plaintiff adequately pleads deliberate indifference.

Plaintiff alleges that Deputies York and Delima threw Napoles to the ground, *see* Compl. ¶ 43, before Deputies York,  Delima, and Fielstra pinned Napoles and punched him, despite the fact that "Napoles was clearly asking the Deputies to stop using force," *id* ¶ 44.   Next, Plaintiff alleges that Deputy Delima tased Napoles multiple times despite Napoles screaming in pain, asking for help, and begging him to stop.  *See id.* ¶¶ 44–45. Plaintiff alleges that Napoles then yelled, "'please help me, . . . they are going to kill me.'" *See id.* ¶ 48.  Next, Plaintiff alleges that Deputy McCormick applied his full body weight to Napoles' chest while Napoles yelled, "'I am f… dying,'" *id.* ¶ 52, and that Deputy McCormick then choked Napoles, rendering him unconscious, *see id.* ¶ 53.  The Court finds that Plaintiff's allegations that these deputies ignored Napoles' repeated pleas for help and continued to exert physical force adequately plead deliberate indifference.  *See De Vincenzi v. City of Chico*, 592 F. App'x 632, 634 (9th Cir. 2015) (holding that plaintiff's theory that officers "consciously ignored [his] cries for help" established the requisite *mens rea* element of deliberate indifference and was sufficient to survive a motion to dismiss).

Plaintiff further alleges that Deputies Adams, Perez, Schaefer, and Cottrell, Jr., along with Deputies Delima and McCormick, then applied their body weight to Napoles, who was already unconscious and handcuffed.  *See id.* ¶ 54.  Plaintiff's allegations are sufficient to infer that these deputies acted with deliberate indifference, as applying body weight to an unconscious, handcuffed person presents an obvious risk of harm.  *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056–57 (9th Cir. 2003) (finding a constitutional violation in similar circumstances and noting other cases of "compression asphyxia" where prone, handcuffed individuals have suffocated under the weight of restraining officers).

Plaintiff also alleges that "Napoles had at some point [four] deputies using their knees and bodies on top of him before they started to apply the extreme restraint device called the 'WRAP.'"  Compl. ¶ 54.  However, Plaintiff does not specify which of the Individual Defendants participated in applying the WRAP device.  *See id.*  Accordingly, Plaintiff's allegations regarding the WRAP device fail to state a claim of interference with familial relationship.  *See Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (holding that a plaintiff must establish the officer's "integral participation" in the alleged constitutional violations).

In addition to these allegations of physical force, Plaintiff asserts that paramedics told Deputies Fealy and Rossall that Napoles had stopped breathing, yet these deputies continued to obstruct the paramedics by attempting to handcuff Napoles despite his suffering a cardiac arrest.  *See* Compl. ¶ 62.  The Court concludes that these allegations allow the reasonable inference that these deputies knew Napoles was at risk of dying but disregarded that risk by obstructing the paramedics, and accordingly Plaintiff adequately alleges their deliberate indifference.

Finally, Plaintiff alleges that Deputy Bushnell interfered with Plaintiff's familial relationship by obtaining blood samples from Napoles at the hospital.  *See* Compl. ¶ 65.  Even after drawing all reasonable inferences from this fact in Plaintiff's favor, the Court does not find that Deputy Bushnell's actions were deliberately indifferent or interfered with Plaintiff's familial relationship with Napoles.  *See Iqbal*, 556 U.S. at 677.

Accordingly, the Court finds that Plaintiff adequately alleges that Deputies York; Delima; Fielstra; McCormick; Adams; Perez; Schaefer; Cottrell, Jr.; Fealy; and Rossall interfered with her familial relationship with Napoles.  Because Plaintiff has failed to adequately allege that Deputy Bushnell interfered with Plaintiff's familial relationship with Napoles, the Court **GRANTS IN PART** the Individual Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's first claim against Deputy Bushnell **WITHOUT PREJUDICE**.  Otherwise, the Court **DENIES** the Individual Defendants' Motion to Dismiss Plaintiff's first claim.

### B.    Claim 2: Excessive Use of Force

Plaintiff brings a second Section 1983 claim for excessive use of force against Deputies York, Delima, Fielstra, McCormick, Adams, and Perez.  Plaintiff alleges that these Individual Defendants deprived Napoles of his right to be free from excessive use of force.  *See* Compl. ¶ 81.  The Individual Defendants argue that Plaintiff fails to specify each Individual Defendant's participation.  *See* Indiv. Mot. Mem. at 8.

Claims of excessive force are analyzed under the Fourth Amendment prohibition against unreasonable seizures.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989).  To state an excessive force claim, a plaintiff must allege facts showing that the defendant's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *Id.* at 397.  In determining the reasonableness of the officer's conduct, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Id.* at 396.  Courts should consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).  Here, Plaintiff alleges that Napoles was an unarmed, nonviolent trespass suspect that posed no threat to the Individual Defendants or anyone else.  *See* Compl. ¶ 44.  Plaintiff further alleges that "Napoles did nothing to prompt the use of force." *Id.* ¶ 43.  Based on these allegations, the Court concludes that the government's interests in the use of force were fairly minimal.

Plaintiff alleges that Deputies York and Delima threw Napoles to the ground before Deputies York, Delima, and Fielstra pinned Napoles and punched him. *See id.* ¶ 44.  The Court finds that the alleged actions of these Individual Defendants were objectively unreasonable when faced with an unarmed, nonviolent trespass suspect.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (holding that gang-tackling and punching a calm trespass suspect would violate that person's Fourth Amendment rights).

/ / /

Plaintiff alleges that Deputy Delima tased Napoles six or more times after Napoles was already pinned on the ground.  *See* Compl. ¶¶ 44–45.  The Court finds that Deputy Delima's alleged use of the Taser was objectively unreasonable in response to the situation confronting him.  *See Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010) (holding that officer's use of a Taser on an unarmed, non-fleeing suspect was excessive force).

Plaintiff further alleges that Deputy McCormick, "despite the fact that Napoles was on the ground, injured, tasered, and handcuffed," used his body weight to pin Napoles before choking him unconscious.  Compl. ¶¶ 50–53.  The Court finds Deputy McCormick's alleged use of force was objectively unreasonable because Napoles was already handcuffed, which further lessened the government's competing interest.  *See Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (holding that the use of a chokehold on a non-resisting person constitutes excessive force).

Plaintiff next alleges that Deputies Adams and Perez, along with other deputies, placed their body weight on an unconscious, handcuffed Napoles.  *See* Compl. ¶ 54.  Based on these allegations, the government's countervailing interests reached their lowest point at this time, and accordingly, these deputies' use of the alleged force on a handcuffed, unconscious trespass suspect was objectively unreasonable.  *See Drummond*, 343 F.3d at 1059 (holding that officers applying body weight to a handcuffed, prone suspect exceeded the minimal force that was warranted).

Although Plaintiff alleges that the Individual Defendants' application of the WRAP device caused Napoles further injury, Plaintiff does not specify which Individual Defendants participated in applying the WRAP device.  *See* Compl. ¶ 54.  Accordingly, Plaintiff's allegations regarding the WRAP device fail to state a claim of excessive force. *See Jones*, 297 F.3d at 935 (holding that a plaintiff must establish the officer's "integral participation" in the alleged constitutional violations).

Nonetheless, the Court finds that Plaintiff pleads sufficient facts to allege that Deputies York, Delima, Fielstra, McCormick, Adams, and Perez used excessive force in
/ / /

1  violation of Napoles' Fourth Amendment rights and **DENIES** Individual Defendants'

2  Motion to Dismiss Plaintiff's second claim for failure to state a claim.

3          *C.      Claim 3: Denial of Medical Care*

4          Plaintiff brings a third Section 1983 claim for denial of medical care against all the

5  remaining Individual Defendants.   The Individual Defendants argue that Plaintiff's

6  Complaint lacks facts demonstrating that each Individual Defendant failed to provide

7  medical care.  *See* Indiv. Mot. Mem. at 9.   The Individual Defendants further argue that,

8  based on Plaintiff's allegations, the Individual Defendants met their constitutional

9  obligation to request prompt medical assistance for Napoles.  *See id.* at 10.  Plaintiff argues

10  that the Individual Defendants failed to meet this constitutional obligation because

11  paramedics were called to treat Deputy York, rather than Napoles, and because the

12  Individual Defendants interfered with the paramedics' ability to treat Napoles.  *See* Indiv.

13  Opp'n at 21.

14          Claims for the denial of medical assistance after an arrest are analyzed under the

15  Fourth Amendment.  *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1098 (9th Cir.

16  2006).  Officers must provide objectively reasonable post-arrest care to an apprehended

17  suspect.  *Id.*  "The Ninth Circuit has not precisely defined the contours of what it means to

18  provide 'objectively reasonable post-arrest care.'"  *Henriquez v. City of Bell*, CV 14-196-

19  GW(SSx), 2015 WL 13357606, at *6 (C.D. Cal. Apr. 16, 2015).  However, the Fourth

20  Amendment analysis generally concerns whether the defendant's conduct was reasonable

21  under the totality of the circumstances, viewed from the perspective of a reasonable person

22  on the scene.  *See Plumhoff v. Rickard*, 572 U.S. 765, 774–75 (2014); *Tatum*, 441 F.3d at

23  1098 ("Just as the Fourth Amendment does not require a police officer to use the least

24  intrusive method of arrest, neither does it require an officer to provide what hindsight

25  reveals to be the most effective medical care for an arrested suspect.") (citations omitted).

26  Typically, an arresting officer who "promptly summons the necessary medical assistance

27  has acted reasonably for purposes of the Fourth Amendment."  *Tatum*, 441 F.3d. at 1099.

28  / / /

Here, Plaintiff alleges that paramedics arrived on the scene to treat Deputy York rather than Napoles. *See* Compl. ¶ 59. Plaintiff further alleges that the Individual Defendants knew Napoles was injured but refused to allow the paramedics to evaluate Napoles without the WRAP device. *See id.* ¶ 61. These allegations do not specify the specific actions of any Individual Defendant and thus fail to adequately state a claim. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Plaintiff next alleges that Deputy McCormick placed a spit bag over Napoles' head before paramedics placed Napoles in the ambulance. *See* Compl. ¶ 61. Plaintiff also alleges that Deputies Fealy and Rossall boarded the ambulance, learned that Napoles could not breathe, and yet obstructed the paramedics by trying to handcuff Napoles while he was suffering a cardiac arrest. *See id.* ¶ 62. The Individual Defendants rely on *Tatum, supra*, where officers requested an ambulance for a handcuffed suspect, to support the reasonableness of their conduct. 441 F.3d at 1099. In *Tatum*, the suspect was no longer breathing and was pronounced dead by the time paramedics arrived. *Id.* The Ninth Circuit held that the officers' actions were reasonable:

> [T]he critical inquiry is not whether the officers did all they could have done, but whether they did all that the Fourth Amendment requires. Here, the officers promptly requested medical assistance, and the Constitution required them to do no more. [Citation omitted.] We hold that it was objectively reasonable for Officers Smith and Chan to request an ambulance for Fullard, rather than performing CPR themselves.

*Id.* The facts in the present case, however, are unlike those in *Tatum*, because Plaintiff alleges that the paramedics were called to treat Deputy York rather than Napoles. *See* Compl. ¶ 59. Further, although the Individual Defendants were not required to perform CPR on Napoles, they were required to provide reasonable post-arrest care. *See Tatum*, 441 F.3d at 1098. The Court finds that placing a spit bag on an unconscious arrestee who is being treated by paramedics falls short of objectively reasonable post-arrest care.

Similarly, the Court finds that obstructing paramedics in an ambulance by attempting to handcuff an unconscious arrestee suffering a cardiac arrest is objectively unreasonable post-arrest care.

Finally, Plaintiff alleges that Deputy Bushnell denied Napoles adequate medical care by obtaining blood samples from Napoles at the hospital. *See* Compl. ¶ 65. Even after drawing all reasonable inferences from this fact in Plaintiff's favor, the Court does not find that Deputy Bushnell's actions at the hospital denied Napoles medical care. *See Iqbal*, 556 U.S. at 677.

Accordingly, the Court finds that Plaintiff adequately alleges that Deputies McCormick, Fealy, and Rossall denied Napoles medical care. Because Plaintiff has failed to adequately allege that the other Individual Defendants denied Napoles medical care, the Court **GRANTS IN PART** the Individual Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's third claim against Deputies York; Delima; Adams; Cottrell, Jr.; Fielstra; Schaefer; Perez; and Bushnell **WITHOUT PREJUDICE**. Otherwise, the Court **DENIES** the Individual Defendants' Motion to Dismiss Plaintiff's third claim for failure to state a claim.

## III.   Qualified Immunity

The Individual Defendants also seek dismissal of Plaintiff's Section 1983 claims based on qualified immunity. *See* Indiv. Mot. Mem. at 10. "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may "exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. If either prong is dispositive, the court need not analyze the other prong. *See id.* at 236–37.

/ / /

At this time, the Court only analyzes the Individual Defendants' entitlement to qualified immunity for those claims Plaintiff has adequately pleaded, as it is not clear there has been a violation of a constitutional right as to the other claims. *See Beattie v. Armenta*, No. 14cv02310 WQH(RBB), 2015 WL 10319088, at *10 (S.D. Cal. July 27, 2015) (finding that discussion of qualified immunity was premature for claims dismissed with leave to amend).

A right is clearly established if the law was "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "Except in the rare case of an 'obvious' instance of constitutional misconduct," a plaintiff must identify a controlling case existing at the time of the incident where an officer acting under similar circumstances as defendants was held to have violated the constitutional right at issue. *See Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

### A.   Claims 1 & 2: Interference with Familial Relationship and Excessive Force

The Individual Defendants argue that they are entitled to qualified immunity on Plaintiff's first and second claims because the use of force alleged in the Complaint did not violate clearly established law. *See* Indiv. Mot. Mem. at 12–13. Plaintiff opposes, arguing that (i) the Individual Defendants' use of force constitutes obvious constitutional misconduct not requiring a showing of controlling precedent, and (ii) clearly established precedent put the Individual Defendants on sufficient notice that their conduct was unconstitutional. *See* Indiv. Opp'n at 7.

#### 1.   Obvious Constitutional Misconduct

In an "obvious case" of constitutional misconduct, an officer may still violate clearly established law even though no controlling precedent exists. *See Brosseau v. Haughen*, 543 U.S. 194, 198–99 (2004) (per curiam). However, the misconduct must be so obvious

that every reasonable officer would have known it was unlawful.  *See al-Kidd*, 563 U.S. at 741.  The Supreme Court has reiterated that the "obvious case" is rare and that the general standard in *Graham* is typically insufficient.  *See id.* at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

Plaintiff argues that no reasonable officer would think that the alleged circumstances would necessitate the level of force used by the Individual Defendants.  *See* Indiv. Opp'n at 10.  The Individual Defendants argue that general statements of the law are insufficient in the present case and that Plaintiff must therefore show controlling precedent.  *See* Indiv. Mot. Mem. at 11.  The Court agrees with the Individual Defendants.  Although the Court finds that some of Plaintiff's allegations in the present case demonstrate excessive force under the *Graham* factors, those alleged instances of force were not obviously excessive such that every reasonable officer would know they were unlawful per se.  Accordingly, Plaintiff's allegations of force fail to present an obvious case of constitutional misconduct.

## 2.   *Clearly Established, Controlling Precedent*

Because the Court finds that this is not an "obvious case" of constitutional misconduct, the Court next analyzes existing precedent regarding the five instances of force alleged in the Complaint: (1) tackle and punches; (2) Taser deployments; (3) use of a carotid choke; (4) application of body weight to an unconscious individual; and (5) use of the WRAP device.  *See* Indiv. Mot. Mem. at 12–13; Indiv. Opp'n at 11–16; Indiv. Reply at 5–8.

To support her argument that Deputies York, Delima, and Fielstra violated clearly established law when they tackled and punched Napoles, Plaintiff relies on *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).  *See* Indiv. Opp'n at 11.  In *Blankenhorn*, the court held that "gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights."  485 F.3d at 478.  The court further held that a reasonable officer would also be on notice that punching a non-resisting suspect would violate the Fourth

Amendment. *Id.* The Individual Defendants distinguish *Blankenhorn* by noting that, in the present case, Plaintiff alleges that Deputy York attempted to pull Napoles by the arm and commanded Napoles to remove his backpack before tackling him. *See* Indiv. Reply at 5; Compl. ¶ 42. However, these facts in the present case are also like those in *Blankenhorn*, where the police officer grabbed the suspect's arm and the suspect pulled free before the officers tackled the suspect. 485 F.3d at 478. Accordingly, the Court finds that Plaintiff sufficiently alleges that Deputies York, Delima, and Fielstra violated clearly established law when they tackled and punched Napoles.

The Parties next dispute if Deputy Delima violated clearly established law by deploying his Taser on Napoles. *See* Indiv. Mot. Mem. at 13; Indiv. Opp'n at 12–13; Indiv. Reply at 6. To support her claim that Deputy Delima violated clearly established law, Plaintiff relies on *Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2010). *See* Indiv. Opp'n at 13. In *Bryan*, the Ninth Circuit held that deploying Taser prongs was an intermediate level of force that violated the non-fleeing, unarmed suspect's Fourth Amendment rights. *See* 630 F.3d at 832. The Individual Defendants note that the court in *Bryan* held the officer was entitled to qualified immunity, *see* Indiv. Reply at 6, because, at the time of that incident in 2005, "there was no Supreme Court decision or decision of our court addressing whether the use of a taser . . . in dart mode constituted an intermediate level of force." 630 F.3d at 833. However, because the incident in the present case occurred after the holding in *Bryan*, Deputy Delima was on notice that his Taser deployments would violate the Fourth Amendment. Accordingly, the Court finds that Plaintiff adequately alleges Deputy Delima violated clearly established law when he deployed his Taser on Napoles.

Next, Plaintiff supports her claim that Deputy McCormick's carotid chokehold violated clearly established law by citing cases from the Sixth Circuit Court of Appeals and the U.S. District Court for the Northern District of Ohio. *See* Indiv. Opp'n at 13–14. The Individual Defendants argue that, because these cases are not controlling, they fail to establish that Deputy McCormick's chokehold violated clearly established law. *See* Indiv. Reply at 6–7; *Sharp*, 871 F.3d at 911 ("To achieve that kind of notice, the prior precedent

must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))). However, in 2019, the Ninth Circuit held that "there is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). In *Tuuamalemalo*, the court further held that, "[g]iven the state of the law in our circuit, it was clearly established [at the time of the incident in 2014] that the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force." *Id.* Although the Ninth Circuit decided *Tuuamalemalo* after the 2018 incident at issue here, the Ninth Circuit found that the unconstitutionality of using a chokehold against a non-resisting, restrained person was clearly established when the incident in that case occurred in 2014. *See id.* at 478. Accordingly, Plaintiff adequately alleges that Deputy McCormick violated clearly established law when he used a carotid chokehold on Napoles.

To support her claim that Deputies McCormick, Adams, Perez, Schaefer, Cottrell, and Delima violated clearly established law when they applied their body weight to restrain Napoles, Plaintiff relies on two non-controlling cases and *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003). *See* Indiv. Opp'n at 14–15. In *Drummond*, the court held that "[t]he officers—indeed, any reasonable person—should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable." 343 F.3d at 1059. Although, in the present case, Plaintiff alleges that Napoles was unconscious by this time, "no court has interpreted *Drummond* to require a restrained suspect to 'plead for air' before receiving Fourth Amendment protection." *Slater v. Deasey*, 789 F.App'x 17, 21 n.3 (9th Cir. 2019), *cert. denied*, __ S.Ct. __, Case No. 19-1085, 2020 WL 6037209 (Oct. 13, 2020). Accordingly, Plaintiff adequately alleges that Deputies McCormick, Adams, Perez, Schaefer, Cottrell, and Delima violated clearly established law when they applied their body weight to restrain Napoles.

1    In addition to the allegations of physical force, Plaintiff asserts her first claim for
2    interference with familial relationship against Deputies Fealy and Rossall for obstructing
3    the paramedics' ability to treat Napoles.  *See* Compl. ¶ 62.  However, Plaintiff fails to
4    provide any controlling precedent showing these deputies violated clearly established law
5    in so doing.  Accordingly, the Court concludes that Deputies Fealy and Rossall are entitled
6    to qualified immunity on Plaintiff's first claim.

7    Because the Court finds that Deputies Fealy and Rossall are entitled to qualified
8    immunity, the Court **GRANTS IN PART** the Individual Defendants' Motion to Dismiss
9    and **DISMISSES** Plaintiff's first claim for interference with familial relationship as to
10    Deputies Fealy and Rossall.  However, the Court finds that, at this stage of the litigation,
11    the Individual Defendants otherwise are not entitled to qualified immunity as to Plaintiff's
12    first and second claims and therefore **DENIES IN PART** the Motion to Dismiss these
13    claims **WITHOUT PREJUDICE** to the Individual Defendants reasserting qualified
14    immunity at a later stage in the proceedings.  *See, e.g.*, *Hernandez v. City of San Jose*, 241
15    F. Supp. 3d 959, 975 (N.D. Cal. 2017) ("[I]n many cases it is impossible to determine based
16    on a complaint alone that qualified immunity is warranted.  In such circumstances, a court
17    may deny a qualified immunity defense without prejudice and after further factual
18    development a defendant may re-raise the qualified immunity issue 'at summary judgment
19    or at trial.'") (citing *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999); *Treglia v.
20    Kernan*, 2013 WL 4427253, at *3 (N.D. Cal. Aug. 15, 2013)), *aff'd in part, dismissed in
21    part*, 897 F.3d 1125 (9th Cir. 2018).

22    **B.    Claim 3: Denial of Medical Care**

23    The Individual Defendants argue that they are entitled to qualified immunity as to
24    Plaintiff's third claim for denial of medical care because Plaintiff's allegations show that
25    the Individual Defendants acted reasonably and did not violate clearly established law.  *See*
26    Indiv. Mot. Mem. at 13.  Plaintiff argues that, in light of current national events and the
27    public interests underlying qualified immunity, the Court should not grant qualified
28    immunity to Deputy McCormick for placing a spit bag over Napoles' head.  *See* Indiv.

Opp'n at 17. However, the Court finds that Deputies McCormick, Fealy, and Rossall did not violate clearly established law regarding Napoles' post-arrest medical care.

Here, Plaintiff alleges that Deputies McCormick, Fealy, and Rossall interfered with paramedics as they treated Napoles. *See* Compl. ¶¶ 59–61. Plaintiff's allegations do not present an "obvious case" of conduct that every reasonable officer would agree violates the law. *See Wesby*, 138 S. Ct. 589 (2018). Further, Plaintiff does not provide any controlling precedent showing that the Individual Defendants violated clearly established law. *See generally* Indiv. Opp'n at 20–21. Accordingly, because Individual Defendants did not violate clearly established law, the Court finds that Deputies McCormick, Fealy, and Rossall are entitled to qualified immunity on Plaintiff's third claim. *See Henriquez*, 2015 WL 13357606, at *6 (C.D. Cal. Apr. 16, 2015) ("The Ninth Circuit has not precisely defined the contours of what it means to provide 'objectively reasonable post-arrest care.'").

In light of the foregoing, the Court **GRANTS IN PART** Individual Defendants' Motion to Dismiss Plaintiff's third claim for denial of adequate medical care as to Deputies McCormick, Fealy, and Rossall.

## IV. Conclusion

In sum, the Court **GRANTS IN PART AND DENIES IN PART** the Individual Defendants' Motion to Dismiss. As to the first claim, the Court **DISMISSES** it: (1) **WITH PREJUDICE** as to Deputies Fealy and Rossall, who are entitled to qualified immunity; (2) **WITH PREJUDICE** to the extent Plaintiff brings it on Napoles' behalf under the Fourteenth Amendment; and (3) **WITHOUT PREJUDICE** as to Sergeant Washington and Deputy Bushnell. The Court concludes that Deputies York; Delima; Fielstra; McCormick; Adams; Perez; Schaefer; and Cottrell, Jr., are not entitled to qualified immunity at this time and **DENIES** the Motion to Dismiss **WITHOUT PREJUDICE** as to them.

As to the second claim, the Court **DISMISSES** it **WITH PREJUDICE** to the extent Plaintiff brings it on Napoles' behalf under the Fourteenth Amendment. The Court

concludes that Deputies York, Delima, Fielstra, McCormick, Adams, and Perez are not entitled to qualified immunity at this time and **DENIES** the Motion to Dismiss **WITHOUT PREJUDICE** as to them.

As to the third claim, the Court **DISMISSES** it: (1) **WITH PREJUDICE** as to Deputies McCormick, Fealy, and Rossall, who are entitled to qualified immunity; (2) **WITH PREJUDICE** to the extent Plaintiff brings it on Napoles' behalf under the Fourteenth Amendment; and (3) **WITHOUT PREJUDICE** as to Sergeant Washington and Deputies York; Delima; Adams; Cottrell, Jr.; Fielstra; Schaefer; Perez; and Bushnell.

As to the seventh, eighth, and tenth claims, the Court **DISMISSES** them **WITHOUT PREJUDICE** as to Sergeant Washington.

As to the eleventh claim, the Court **DISMISSES** it: (1) **WITH PREJUDICE** to the extent Plaintiff brings it on Napoles' behalf under the Fourteenth Amendment; and (2) **WITHOUT PREJUDICE** as to Sergeant Washington.

## THE INDIVIDUAL DEFENDANTS' MOTION TO STRIKE

The Individual Defendants further request that the Court strike Exhibit No. 1 to the Complaint and the Complaint's references thereto, *see* Indiv. Mot. Mem. at 15–16, arguing that the video exhibit is immaterial because the Federal Rules of Civil Procedure describe pleadings as containing "'statements' and 'allegations,'" *id.* at 15 (citing Fed. R. Civ. P. 8, 9), which language "does not contemplate photographs, videos or other objects," *id.*  The Individual Defendants seemingly argue that Federal Rule of Civil Procedure 10 limits exhibits to pleadings to "written instrument[s]." *Id.* (citing Fed. R. Civ. P. 10(c)).  The Individual Defendants claim that courts that have addressed this issue have stricken exhibits that do not qualify as written instruments. *See id.* at 15–16 (citations omitted).

Plaintiff opposes, arguing that the video exhibit is "essential and materially related to the claims alleged." Indiv. Opp'n at 23.  Plaintiff argues that the authorities cited by the Individual Defendants are inapposite, and that at least one judge within this District has found a police dashcam video incorporated by reference into a complaint. *Id.* at 23–24 (citations omitted).  In their Reply, the Individual Defendants assert a new argument in

support of their Motion to Strike, claiming that the video "also should be stricken because it has been altered and edited," rendering the authority relied on by Plaintiff inapt.  Indiv. Reply at 8.

"Generally, material beyond the pleadings may not be considered in deciding a motion to dismiss."  *Covert v. San Diego*, No. 15CV2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017).  However, a court may look to documents on which the complaint necessary relies if their authenticity is not contested.  *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).  Here, the Individual Defendants waited until their Reply to "dispute the authenticity of Exhibit 1 because it is clear that the video has been altered."  Indiv. Reply at 9.  The Court need not consider arguments raised for the first time in reply.  *See Lentini v. Cal. Ctr. For the Arts*, 370 F.3d 837, 843 n.6 (9th Cir. 2004) ("We decline to consider this argument because the appellee has not been given the opportunity to respond."); *United States v. Rearden*, 349 F.3d 608, 614 n.2 (9th Cir. 2003) ("We decline to consider Rearden's argument . . . because it is raised for the first time in reply."); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("We decline to consider new issues raised for the first time in a reply brief.").

Moreover, given that there are cases that have permitted photographs or videos to be attached as exhibits to or incorporated by reference into pleadings and considered on a motion to dismiss, the Court does not find the Individual Defendants' arguments under Rule 10(c) to be dispositive.  *See, e.g.*, *Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434 (10th Cir. 2017) (surveillance video considered on motion to dismiss excessive force claim); *Sanchez v. Bay Area Rapid Transit Dist.*, No. 13-CV-1885 YGR, 2013 WL 4764485, at *9 (N.D. Cal. Sept. 5, 2013) ("There is no inflexible rule governing the sort of written instruments that may be attached to a pleading. Expert reports and photographs are commonly attached to complaints and the BART Defendants have not persuaded the Court that the materials in this case are redundant, immaterial, impertinent, or scandalous, as contemplated by Rule 12(f).") (citations and internal quotation marks omitted); *Ware v. Hosp. of the Univ. of Pa.*, No. 2:14-CV-00014,

2015 WL 5729243, at *4 (E.D. Pa. Sept. 30, 2015) (denying motion to strike photographs embedded in complaint); *Holder v. Enbridge Energy, L.P.*, No. 1:10-CV-752, 2011 WL 3878876, at *6 (W.D. Mich. Sept. 2, 2011) (same).  Finally, the Court's disposition of the Individual Defendants' Motion to Dismiss would be the same, whether or not the Court were to consider Exhibit No. 1, as the Complaint repeatedly sets out independently what is seen in the video footage.  *See, e.g.*, Compl. ¶¶ 29, 31, 32, 36, 43, 45, 46, 48, 50, 53. Accordingly, the Court **DENIES** the Individual Defendants' Motion to Strike **WITHOUT PREJUDICE**.

## THE COUNTY DEFENDANTS' MOTION TO DISMISS

### I.   Claims Against Sheriff Gore

As noted above, Plaintiff purports to bring eight claims against Sheriff Gore, both in his individual and official capacity, *see* Compl. ¶ 11, for: (1) interference with familial relationship under Section 1983, *id.* ¶¶ 71–79 (first claim); (2) denial of medical care under Section 1983, *id.* ¶¶ 86–93 (third claim); (3) ratification under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), *id.* ¶¶ 94–104 (fourth claim); (4) failure to train under *Monell*, *id.* ¶¶ 105–15 (fifth claim); (5) unconstitutional custom or policy under *Monell*, *id.* ¶¶ 117–20 (sixth claim); (6) negligence, *id.* ¶¶ 121–42 (seventh claim)[7]; (7) violation of the Bane Act, *id.* ¶¶ 143–47 (eighth claim); and (8) unreasonable search and seizure under Section 1983, *id.* ¶¶ 110 –12 (eleventh claim).

First, the County Defendants seek to have the claims brought against Sheriff Gore in his official capacity dismissed as duplicative of the claims brought against the County. *See* ECF No. 20-1 ("Cty. Mot. Mem.") at 5–6.  Plaintiff does not appear to address this issue in her Opposition.  *See generally* Cty. Opp'n.  The Court agrees that the weight of authority in the Ninth Circuit favors dismissal of official capacity claims brought under

---

[7] Plaintiff's Opposition to the County Motion to Dismiss asserts that "[t]he only State claim alleged also against Defendant Gore is a claim pursuant Ca. Civil Code 52.1 'Bane Act Claim.'"  Cty. Opp'n at 22. However, Plaintiff's negligence claim is purportedly brought "against ALL Defendants in this complaint." Compl. at 24.  Thus, out of an abundance of caution, the Court includes the negligence claim in its analysis.

Section 1983 when the municipality is also sued.  *See, e.g.*, *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.") (emphasis in original) (citation omitted); *Cavanaugh v. Cty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *25 (S.D. Cal. Nov. 12, 2020) ("Here, Plaintiffs have already pled a separate claim against the County of San Diego, making the official capacity allegations duplicative. . . .  Thus, the Court agrees with Defendants and dismisses all defendants to the extent they are sued in their official capacity, leaving only the allegations against them in their individual capacity.").  Accordingly, to the extent Plaintiff's claims are brought against Sheriff Gore in his official capacity, the Court **DISMISSES WITH PREJUDICE** those claims.

Second, the County Defendants assert that the *Monell* claims against Sheriff Gore must be dismissed because *Monell* liability is limited to municipalities.  *See* Cty. Mot. Mem. at 8 n.4 (citing *Monell*, 436 U.S. at 694).  Again, Plaintiff does not appear to address this argument.  *See generally* Cty. Opp'n.  Although a technicality, Sheriff Gore's argument has merit.  *See Kuhns v. City of Albany*, No. 6:18-CV-01254-JR, 2018 WL 6313610, at *1 (D. Or. Oct. 10, 2018) ("An individual employee cannot be liable under a Monell theory of liability."), *report and recommendation adopted*, No. 6:18-CV-01254-MK, 2018 WL 6313005 (D. Or. Nov. 30, 2018).  However, it is possible that Plaintiff would be able to assert viable claims against Sheriff Gore pursuant to a supervisory liability theory rather than *Monell*.  *See, e.g.*, *Starr v. Cty. of Los Angeles*, No. CV08-508-GW(SHX), 2008 WL 11409889, at *1 (C.D. Cal. June 12, 2008) (granting with leave to amend motion to dismiss claim for supervisory liability under Section 1983 against Sheriff Leroy Baca).  Accordingly, the Court **DISMISSES** claims four through six against Sheriff Gore

/ / /

/ / /

/ / /

**WITHOUT PREJUDICE** to Plaintiff reasserting them as supervisory liability rather than *Monell* claims.[8]

As to the Section 1983 and Bane Act claims, the County Defendants argue that they must be dismissed as to Sheriff Gore because there are no factual allegations showing that Sheriff Gore personally participated in any of the alleged deprivations or was callously indifferent to Plaintiff's or Napoles' rights, and accordingly Plaintiff fails to state viable claims against him.  Cty. Mot. Mem. at 6.  Plaintiff responds that "[t]he issue is not whether he was physically at the location of the incidents," but rather "whether his actions or inactions in supervision, and control of his subordinates, as well as his acquiescence to constitutional deprivations, could be found by a trier of fact as reckless or callous indifference to the constitutional rights of Plaintiff's son resulting in his death."  Cty. Opp'n at 9.

"Because vicarious liability is inapplicable to . . . § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *See Iqbal*, 556 at 676.  "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").  Supervisory officials may only be held liable under § 1983 if a plaintiff alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).

---

[8] However, the Court notes that the analysis of Plaintiff's *Monell* claims *infra* at 37–41 is pertinent to any such claims Plaintiff may choose to reassert against Sheriff Gore as supervisory claims in an amended pleading, as "[t]he same 'deliberate indifference' standard applies to failure to train claims against a local governmental entity, such as a municipality, a county, or a county sheriff's department, and against supervisors employed by those entities, such as a county sheriff."  *Santos Garcia v. San Bernardino Sheriff's Dep't*, No. EDCV200265SVWPVC, 2020 WL 4760164, at *7 (C.D. Cal. May 18, 2020).

Plaintiff makes no such factual allegations against Sheriff Gore in her Complaint. Instead, she includes only conclusory and boilerplate allegations that are inadequate to state viable claims. Accordingly, the Court agrees that the Section 1983 claims against Sheriff Gore, as currently pleaded, must be **DISMISSED**. *See Cavanaugh*, 2020 WL 6703592, at *29 n.21 ("[W]hile Plaintiffs[] conclusorily allege Sheriff Gore was aware deputies failed to follow policy and procedure, there are no allegations as to how he knew this, when he was informed of it, any basis for this knowledge, or which policies he knew were being violated. Thus, such generalized allegations of knowledge fail to meet the *Iqbal* standard.") (citation omitted). As Plaintiff could conceivably plead sufficient facts concerning Sheriff Gore's own actions or omissions to state plausible Section 1983 claims against him, dismissal is **WITHOUT PREJUDICE**.[9]

Likewise, and similar to the allegations against Sergeant Washington, *see supra* at 12, Plaintiff has not alleged that Sheriff Gore interfered with any rights secured by federal or state law via threats, intimidation, or coercion, and accordingly Plaintiff fails to state a claim against Sheriff Gore under the Bane Act. *See Reese*, 888 F.3d at 1040 ("The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'") (citation omitted). Accordingly, the Court agrees that Plaintiff also fails to state a claim for violation of the Bane Act against Sheriff Gore and **DISMISSES** the claim **WITHOUT PREJUDICE**.

Finally, Sheriff Gore argues that, because there are no adequate allegations of his personal participation in any of the complained of acts, the state law claims against him

---

[9] Sheriff Gore asserts that, to the extent Plaintiff does state any Section 1983 claims for relief, he is entitled to qualified immunity because "Plaintiff cites to no authority which clearly established a law that Sheriff Gore purportedly violated." Cty. Mot. Mem. at 8. While the Court agrees that Plaintiff's showing on the qualified immunity issue was inadequate, given the Court's disposition of these issues, the Court finds it premature to address the issue of qualified immunity at this juncture. *See Beattie*, 2015 WL 10319088, at *10 (finding that discussion of qualified immunity was premature when the court dismissed the plaintiff's claims with leave to amend).

must be dismissed, as he is immune from liability under Section 820.8 of the California Government Code, which shields public officials from *respondeat superior* liability. *See* Cty. Mot. Mem. at 16. Plaintiff again does not appear to address this argument in her Opposition. However, the Court agrees that, as currently pleaded, the Complaint fails to adequately state that Sheriff Gore in his personal capacity committed any act or omission that would render him liable for negligence, and the Court has already found that Plaintiff has not adequately pleaded that Sheriff Gore violated the Bane Act. Accordingly, the Court agrees that, as currently pleaded, the Complaint fails to allege plausibly any actionable state law claims as to Sheriff Gore. Thus, the Court also **DISMISSES WITHOUT PREJUDICE** the negligence claim against Sheriff Gore.

In sum, the Court **GRANTS** the County Defendants' Motion as to all claims asserted against Sheriff Gore and **DISMISSES** the relevant claims **WITHOUT PREJUDICE** to the extent they are asserted against Sheriff Gore in his individual capacity and **WITH PREJUDICE** to the extent they are asserted against Sheriff Gore in his official capacity.

## II.   Claims Against the County

Similarly, Plaintiff purportedly brings eight claims against the County for: (1) interference with familial relationship under Section 1983, Compl. ¶¶ 71–79 (first claim); (2) denial of medical care under Section 1983, *id.* ¶¶ 86–93 (third claim); (3) ratification under *Monell*, *id.* ¶¶ 94–104 (fourth claim); (4) failure to train under *Monell*, *id.* ¶¶ 105–15 (fifth claim); (5) unconstitutional custom or policy under *Monell*, *id.* ¶¶ 117–20 (sixth claim); (6) negligence, *id.* ¶¶ 121–42 (seventh claim); (7) violation of the Bane Act, *id.* ¶¶ 143–47 (eighth claim); and (8) unreasonable search and seizure under Section 1983, *id.* ¶¶ 110 –12 (eleventh claim).

As an initial matter, the County Defendants argue that municipal liability under Section 1983 is limited to those claims asserted in claims four through six, and that otherwise "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Cty. Mot. Mem. at 8–9 (citation and internal quotation marks omitted). Again, Plaintiff does not appear to address this argument in her Opposition,

although she does acknowledge that "[t]he government entity may not be held vicariously liable for the actions of its employees, but instead is liable only for actions that may be attributed to the government entity itself." Cty. Opp'n at 13 (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). It appears, however, that the first, third, and eleventh claims improperly attempt to hold the County vicariously liable for the acts of its employees or agents, and at any rate are duplicative of the *Monell* claims. Accordingly, the Court **DISMISSES WITH PREJUDICE** claims one, three, and eleven against the County. *See Burns v. City of Concord*, No. C 14-00535 LB, 2014 WL 5794629, at *11 (N.D. Cal. Nov. 6, 2014) (dismissing with prejudice Section 1983 claim against municipal defendants where plaintiff already alleged a separate *Monell* claim against them).

As to the state law claims, the County Defendants contend, and Plaintiff apparently does not dispute, that the County cannot be held directly liable. *See* Cty. Mot. Mem. at 15. Thus, to the extent Plaintiff asserts state law claims against the County, she must rely on vicarious liability. The County Defendants argue that, to the extent the Court grants the Individual Defendants' Motion to Dismiss the state law claims, there is no violation of law for which the County may be found vicariously liable. *Id.* at 15–16. However, as explained *supra* at note five, the Individual Defendants only sought dismissal of Plaintiff's state law claims as to Sergeant Washington. Accordingly, the state law claims against the remaining Individual Defendants continue to provide a basis for vicarious liability for the County.

Moreover, the County Defendants argue, to the extent the Court dismisses the Section 1983 claims, the Court should decline to exercise supplemental jurisdiction over the state law claims. *Id.* at 14–15. However, as explained *supra* at note five, there is at least one Section 1983 claim, the eleventh claim for unreasonable search and seizure against Deputy Bushnell, that the Individual Defendants did not seek to dismiss; further, for the reasons provided *supra* at 13–29 and *infra* at 39–41, the Court has concluded that Plaintiff adequately alleges portions of her claims brought under Section 1983. Accordingly, because the Court continues to exercise federal question jurisdiction over this

/ / /

matter, the Court **DENIES WITHOUT PREJUDICE** the County Defendants' request to dismiss the state law claims asserted against the County.

The Court will now address each of the *Monell* claims in turn.

### A.    *Claim 4: Ratification*

The County Defendants argue that Plaintiff fails to state a claim for ratification because her allegation that the County Defendants ratified the deputies' conduct when they "'fail[ed] to take remedial actions as stated above, and moreover . . . publicly support[ed] the behavior observed by their Sheriff Deputies involved,'" Cty. Mot. Mem. at 9 (quoting Compl. ¶ 100), is insufficient, *id.* (citing *Kong Meng Xiong v. City of Merced*, Case Nos. 1:13–cv–00083–SKO, 1:13–cv–00111–SKO, 2015 U.S. Dist. LEXIS 99146, at *93 (E.D. Cal. July 29, 2015)). Plaintiff counters that the Complaint pleads an adequate factual basis for her claim—namely, that her son died as a result of the Individual Defendants' constitutional violations, that the County Defendants had actual or constructive knowledge that the Individual Defendants engaged in unconstitutional conduct, that none of the Individual Defendants was disciplined, and that none of the Individual Defendants was charged or investigated for the misconduct. Cty. Opp'n at 17–18. The County Defendants respond by arguing that knowledge of unconstitutional conduct alone is inadequate to establish ratification; rather, a plaintiff must allege "affirmative action by police chiefs, and not merely a lack of disciplinary action or refusal to overrule a subordinate's action." Cty. Reply at 4 (citing *Christie v. Iopa*, 176 F.3d 1231, 1239–40 (1999)).

The Court agrees that, as currently pleaded, Plaintiff's ratification claim is too conclusory to state a claim. *See, e.g.*, *Bagos v. Vallejo*, No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, at *8 (E.D. Cal. Oct. 13, 2020) ("Plaintiff's broad allegations that Chief Bidou and the Doe defendants 'publicly and openly deny the existence of any ongoing and system violence and/or unlawful conduct,' to such an extent that they 'criticize' media outlets for reporting otherwise, . . . are not sufficient to plead a 'conscious, affirmative choice.'"). Accordingly, the Court **GRANTS** the County Defendants' Motion to Dismiss

/ / /

the fourth claim as asserted against the County and **DISMISSES** it **WITHOUT PREJUDICE**.

### B.    Claim 5: Failure to Train

The County Defendants argue that Plaintiff's fifth claim for failure to train fails because Plaintiff has not adequately shown deliberate indifference.  Cty. Mot. Mem. at 10–12.  Further, the County Defendants assert that "mere allegations of a pattern of constitutional violations are insufficient; the plaintiff must point to actual findings of constitutional violations in order to impose federal civil rights liability on a municipality for an alleged program failure."  *Id.* at 12 (citing *Connick*, 563 U.S. at 63).  Plaintiff argues that, unlike in *Connick*, she has alleged that the County Defendants were "on notice and or constructive notice that the lack of proper training caused within the San Diego County Sheriff's Dpt. violations to constitutional rights of others."  Cty. Opp'n at 16.  Plaintiff further disputes that she is required to point to "prior judicial rulings addressing a similar case or not."  *Id.* at 17.  On reply, the County Defendants further claim that Plaintiff's allegations are "threadbare" and fail to "identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiff's harm."  Cty. Reply at 5 (citations omitted).

The Court agrees that the Complaint presently fails to adequately allege a "pattern of constitutional violations" such that the County was deliberately indifferent.  While the Court does not agree with the County Defendants that allegations detailing "actual findings of constitutional violations" are necessary—*see, e.g.*, *Nishimoto v. Cty. of San Diego*, No. 316CV01974BENJMA, 2017 WL 2709742, at *4 (S.D. Cal. June 20, 2017) (rejecting argument by the County of San Diego "that the pattern of constitutional violations must be based on 'adjudicated fact'")—the Court agrees that something more than the unsupported allegation that "[t]he unlawful acts and omissions of the Deputy Defendants as perpetrated here against the Decedent, are just part of series of deaths that have occurred in San Diego County where SDSD Sheriffs Deputies are involved and engage in such practices in violation of the US Constitution," Compl. ¶ 99, is needed.  *See NeSmith v. Cty. of San*

38

*Diego*, No. 15CV629 JLS (JMA), 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) ("Plaintiffs' generalized information on suicide rates in the County's jails is, for purposes of plausibly stating a claim for government entity liability, a step in the right direction. As presented, however, it is too vague to establish the 'pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train' or failure to implement policies.") (citing *Connick*, 564 U.S. at 71–72).

The Court does not believe this to be a difficult pleading hurdle for Plaintiff to overcome, or one that requires discovery. Some statistics about excessive force complaints against the County, or examples of similar excessive force lawsuits filed before the incident, would suffice. *See, e.g.*, *id.* at *16 (signaling that further statistics about suicide rates in County facilities could support the plaintiff's failure to train claim); *Nishimoto*, 2017 WL 2709742, at *4–5 (finding allegations about six prior suicides at detention facilities were adequate to plead a pattern); *Estate of Adkins ex rel. Adkins v. Cty. of San Diego*, No. 3:18-CV-00371-H-JMA, 2018 WL 1942397, at *5 (S.D. Cal. Apr. 25, 2018) (concluding that complaint stated claim for failure to train where it contained allegations concerning "five other state and federal lawsuits against the County and various Sheriff's deputies alleging unlawful taser usage").

Accordingly, the Court **GRANTS** the County Defendants' Motion to Dismiss Plaintiff's fifth claim as to the County and **DISMISSES** the claim **WITHOUT PREJUDICE**.

### C.     *Claim 6: Unconstitutional Policy or Custom*

Finally, the County Defendants argue that Plaintiff's sixth claim is inadequate because "the Complaint fails to identify any formal County policy alleged to be unlawful, and to have caused Plaintiff's injuries." Cty. Mot. Mem. at 13. Nor does Plaintiff allege facts showing "'the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 17 (1988)). Rather, "the Complaint solely contains boilerplate allegations

regarding unlawful practices of the San Diego County Sherriff's Department," and "lacks facts that any of the individual deputies were involved in incidents of excessive force prior to this incident." *Id.* at 13–14.  Plaintiff claims her allegations are adequate, and to the extent they are deficient, it is because "[D]efendants . . . [d]eny plaintiff from her right to the discovery of policies and internal records involving use of force."  Cty. Opp'n at 19–20.

Although a close call, the Court believes that, at this early stage in the litigation, Plaintiff has adequately pleaded the existence of policies or customs to survive a motion to dismiss.   The Court acknowledges the cases cited by the County Defendants finding policies or customs to be inadequately pleaded. *See* Cty. Reply at 6–7.  However, *Wilson v. City of Fresno*, which alleged only "a threadbare claim that the City 'used and/or allowed official policies, procedures and/or practices to discriminate against Plaintiff Wilson,'" is facially distinguishable.  No. CVF 09-0887 LJO SMS, 2009 WL 3233879, at *10 (E.D. Cal. Oct. 2, 2009).  While the other cases the County Defendants cite contain allegations more in line with those at issue in the Complaint, the Court finds more persuasive the reasoning of cases such as *Mateos-Sandoval v. County of Sonoma*, which found that a similar listing of informal or overarching deficient policies was adequate "to 'give fair notice and to enable the opposing party to defend itself effectively,' particularly since information relating to the policies, customs, and practices of County Defendants in enforcing § 14602.6 and related statutory sections is likely to be easily available to them." 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013) (quoting *Starr,* 652 F.3d at 1216), *aff'd sub nom. Sandoval v. Cty. of Sonoma*, 591 F. App'x 638 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g*, 599 F. App'x 673 (9th Cir. 2015); *see also Winger v. City of Garden Grove*, No. SACV130267AGRNBX, 2013 WL 12376992, at *4 (C.D. Cal. Aug. 12, 2013) (finding alleged policies such as "failing to properly train police and fire department personnel to recognize symptoms of a stroke, and other serious medical conditions," adequate to state *Monell* claim and survive motion to dismiss); *Gerrie v. Cty. of San Bernardino*, No. EDCV191435JGBSPX, 2020 WL 3978060, at *4 (C.D. Cal. June

19-CV-2303 JLS (LL)

4, 2020) (finding allegations of policies such as "[p]roviding inadequate mental health and behavioral care to children" adequate at pleading stage).  Accordingly, at this stage of the litigation, the Court finds Plaintiff has adequately pleaded a potential *Monell* claim premised on an unconstitutional policy, and that Plaintiff is plausibly entitled to relief.  *See, e.g.*, *Sanders v. City of Nat'l City*, No. 20-CV-00085-AJB-BLM, 2020 WL 6361932, at *4 (S.D. Cal. Oct. 29, 2020) (finding similar allegations in warrantless entry case adequate to state a claim at the motion to dismiss stage).  Accordingly, the Court **DENIES** the County Defendants' Motion to Dismiss Plaintiff's sixth claim as to the County.

### D.    Conclusion

In sum, the Court **GRANTS IN PART AND DENIES IN PART** the County Defendants' Motion to Dismiss the claims asserted against the County.  The Court **GRANTS** the Motion as to claims one, three, four, five, and eleven.  Claims one, three, and eleven are **DISMISSED WITH PREJUDICE**, and claims four and five are **DISMISSED WITHOUT PREJUDICE**.  The Court **DENIES** the Motion as to Plaintiff's sixth, seventh, and eighth claims.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the Individual Defendants' Motion to Dismiss, as set forth *supra* at 28–29.  Further, the Court **DENIES WITHOUT PREJUDICE** the Individual Defendants' Motion to Strike.  The Court also **GRANTS IN PART AND DENIES IN PART** the County Defendants' Motion to Dismiss, as set forth *supra* at 35 and 41.

Plaintiff **MAY FILE** an amended complaint within thirty (30) days of the electronic docketing of this Order.  Should Plaintiff elect to file an amended complaint, it must cure the deficiencies noted herein and must be complete in itself without reference to Plaintiff's prior complaint.  *See* S.D. Cal. CivLR 15.1.  Any claims not re-alleged in the amended complaint will be considered waived.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).  ***Failure to file an amended complaint within thirty (30) days of the***

/ / /

*electronic docketing of this Order may result in dismissal **with prejudice** of all claims*
*asserted against Sergeant Washington and Sheriff Gore in this action.*

**IT IS SO ORDERED.**

Dated:  January 5, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

42

19-CV-2303 JLS (LL)