Jesus Eduardo Arias, Esq. LL.M.  [ SBN  293983 ]
18000 Studebaker Rd. Suite 700
Cerritos California 90703
E| jearias@jesuseduardoarias.com
Tel| 323) 815 9450  Fax| 323) 375 1196
*Attorney for Plaintiff* Dolores Rosales

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DOLORES ROSALES,                )
                                )
              Plaintiff,        )
                                )
      vs.                       )
                                )
COUNTY OF SAN DIEGO; Deputy)
Terence YORK an individual; Deputy)
Brandon DELIMA  an individual; Deputy)
Evan MCCORMICK an individual; Deputy)
Nicholas ADAMS an  individual; Deputy)
Carl FIELSTRA   an individual; Deputy)
Ronald BUSHNELL an individual;  and)
DOES 1 through 50, inclusive.   )
                                )
              Defendants,        )
                                )
                                )
                                )
                                )
                                )

**Case No.** 19-CV-2303 JLS-DEB

## FIRST AMENDED COMPLAINT

1. 14th  Amendment—Substantive Due Process Violation 42 U.S.C. § 1983 (Interference - familial relationship)
2. 4th- Amendment.42 U.S.C.§ 1983 (Excessive Use of Force)
3. (4thAmendment 42 U.S.C. § 1983 (Denial of medical care deliberate indifference to serious medical need)
4. Municipal Liability-Failure to train and or to supervise  *"Monell"* 42 U.S.C. § 1983
5. Municipal Liability-Unconstitutional Customs & Practices 42 U.S.C.1983
6. Negligence -Wrongful Death Under Ca. Law & Gov. Code  §815.2
7. Violation Cal. Civil Code § 52.1 et al; *(The Tom Bane Civil Rights Act )*
8. False Arrest - False Imprisonment
9. Battery under California Law
10. Violation to the  4th Amendment Unreasonable Search & Seizure (taking of blood without consent or warrant)

## [ DEMAND FOR JURY TRIAL]

PLAINTIFF'S COMPLAINT  FOR DAMAGES

**COMPLAINT FOR DAMAGES**

¨Plaintiff¨ DOLORES ROSALES is the mother and the successor in interest to decedent, MARCO ANTONIO NAPOLES. Plaintiff individually and as successor in interest brings this Civil Complaint for violation of civil rights and for wrongful death against Defendants; County of San Diego (¨COUNTY¨); Deputy Terence York, an individual; Deputy Brandon Delima an individual; Deputy Evan McCormick an individual, Deputy Nicholas Adams an individual; Deputy Carl Fielstra an individual; Deputy Ronald Bushnell an individual; and DOES 1 through 50 inclusive; and respectfully allege as follows:

## I.   JURISDICTION AND VENUE

1. This civil action is brought for redress of violations to constitutional rights protected under 42 U.S.C. § 1983, 1985, 1986, 1988, and for violations to the Fourth & Fourteenth Amendments of the United States Constitution. Jurisdiction is based under 28 U.S.C. § 1331,1343,367. This Honorable US District Court has supplemental jurisdiction over Plaintiff's State claims pursuant to 28 U.S.C. § 1367 (a) because those claims are intrinsically related to the federal claims and they form part of the same case and controversy under Article III of the US Constitution.

2. Venue in this District Court is proper under 28 U.S.C. § 1391(b), because all Defendants reside in this Judicial District and all of the incidents and occurrences giving rise to this case occurred within the geographical area covered by this Southern Judicial District. The amount in controversy exceeds the minimum jurisdictional limits.

3. Plaintiff DOLORES ROSALES duly filed and served Government Claim pursuant to California Government Code Section 910 et seq. Defendant County of San Diego rejected the claim on August 30, 2019.

## II.  **INTRODUCTION**

4.  This action seeks compensatory damages from Defendants for serious violations to various rights under the United States Constitution and under California State law resulting in the death of Marco Antonio Napoles a 29 years old man.

5.  Defendants used unreasonable force resulting in the death of NAPOLES. Video footage evidence shows shocking images of the excessive use of force. In support, Plaintiff is concurrently seeking leave of Court to submit for filing; video footage excerpts as **EXHIBIT 1** of the Complaint. (per CASD ECF rules and procedures).

6.  Plaintiff is the mother of the decedent. Legal standing is vested pursuant California Civil Procedure Code §377.60 (b). A Declaration pursuant CCP 377.32 is here enclosed as **EXHIBIT 2.**

7.  Plaintiff acts in her individual capacity and as successor in interest to Decedent for wrongful death damages including survival damages for Mr. Marco Napoles' death, for the loss of enjoyment of his life, and his pre-death pain and suffering.

## III.  **PARTIES**

8.  At all relevant times Decedent MARCO ANTONIO NAPOLES ("NAPOLES") was an habitual resident of el Monte California County of Los Angeles.

9.  Plaintiff DOLORES ROSALES is the natural mother of Decedent Marco Antonio Napoles. Plaintiff was dependent upon her son at the time of his death for the necessities of her life, including and not limited to shelter, food, and medical care.

10. At all relevant times, Defendant COUNTY OF SAN DIEGO ("COUNTY") was a municipal corporation existing under the laws of the State of California. "COUNTY" is a chartered subdivision of the State of California with the capacity to be sued pursuant to 42 U.S.C § 1983 as upheld by *Monell v. Dpt. Of Social Services (1978) 436 US. 658, 691.* COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, training, supervision, and customs of the

PLAINTIFF'S COMPLAINT FOR DAMAGES

San Diego Sheriff Department "SDSD" and its employees and agents complied with the laws of the United States and California Law.

11. At all relevant times, Defendant TERENCE YORK, ("YORK"), was a Sheriff Deputy working for SDSD. YORK was acting under color of law and within the course and scope of his employment as a deputy for SDSD. YORK was acting within the complete authority and ratification of his principal, (COUNTY).

12. At all relevant times, Defendant BRANDON DELIMA, ("DELIMA"), was a Sheriff deputy working for SDSD. DELIMA was acting under color of law and within the course and scope of his employment as a deputy for SDSD. DELIMA was acting within the complete authority and ratification of principal -COUNTY.

13. At all relevant times, Defendant EVAN MCCORMICK, ("MCCORMICK"), was a Sheriff's deputy working for SDSD. MCCORMICK was acting under color of law and within the course and scope of his employment as a deputy for SDSD. MCCORMICK was acting within the complete authority and ratification of his principal - Defendant COUNTY.

14. At all relevant times, Defendant NICHOLAS ADAMS, ("ADAMS"), was a Sheriff deputy working for SDSD. ADAMS was acting under color of law and within the course and scope of his employment as a deputy for SDSD. ADAMS was acting within the complete authority and ratification of Defendant COUNTY.

15. At all relevant times, Defendant CARL FIELSTRA was a Sheriff deputy working for SDSD.FIELSTRA was acting under color of law and within the course and scope of his employment as a deputy for SDSD. FIELSTRA was acting within the complete authority and ratification of his principal, Defendant COUNTY.

16. At all relevant times, Defendant RONALD BUSHNELL was a Sheriff deputy working for SDSD. BUSHNELL was acting under color of law and within the course and scope of his employment as a deputy for SDSD.

17. Plaintiff reasonably believes and therefore here alleges that at all relevant times, the individual Defendants DOES 1-50 were residents of the County of San Diego.

PLAINTIFF'S COMPLAINT FOR DAMAGES

### IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

18. PLAINTIFF repeats and re-alleges each and every foregoing allegation with the same force and effect as if fully set forth herein.

19. Marco Napoles was 29 years old at the time of his death. He was a student pursuing a career as a Barber and he worked at Barbershops in the City of el Monte California.  He had no criminal background and he had no children. He supported his mother financially. Plaintiff relied on Decedent for her life necessities.

20. **On August 16 2018,** upon plaintiff's information and belief NAPOLES was traveling from or to Temecula California when his vehicle Nissan Altima malfunctioned. He left his car on the side of the highway and looked for help. He walked to the nearest Gas Station which was miles away located at 4730 Highway 76 in the City of Fallbrook, California County of San Diego.

21. The following factual events have been recorded on video. (Sheriff Deputy's body cameras, surveillance video from the gas station store and by-stander witness' cellphone recordings). Excerpts of these videos is submitted as **Exhibit No. 1.**

22. When NAPOLES entered to the  Gas Station store, he talked to an employee and asked her for help. i.e. He asked if she could let him charge his cellphone at the store. Napoles wanted to call his family & friends and ask them to pick him up. The employee nicely let him use her phone to make a phone call while NAPOLES' phone was being charged. It was around  2 to 4 am when Marco was at  this Gas Station in the middle of a Highway simply asking for help.

23. While he was inside the Gas Station store NAPOLES did not threat any body, nor he acted in any way that would cause the store employees or anybody to feel threatened or in imminent danger.  In fact, video surveillance shows NAPOLES remained in the store for several minutes simply waiting for his phone to be charged. Upon Plaintiff's information and belief, NAPOLES  felt safer by being at a this Gas Station Store rather than being somewhere else. ( The surrounding area to the gas station in turn was desolate and very dark). His car was miles away.

24. Surveillance video shows that NAPOLES was normally chatting with other store employees and even with other customers without being a threat or a danger to anyone. At or around 4:30 am, a new store employee came to the store. Upon Plaintiff's information and belief, she was a manager and she apparently did not want NAPOLES to be standing inside the store for prolonged time. The manager told NAPOLES that he should leave or he should stand outside the store near the gas pumps or the parking area. NAPOLES stayed outside the door of the store near the gas pumps. He was not aggressive or violent to anyone and at no point he acted in any threatening manner when he was inside the store. He was simply waiting for his phone to be charged and trying to reach for friends or family to be picked up.

25. Upon information and belief, NAPOLES sometimes would get back inside the store presumably to check the status of his cellphone charging. At some point thereafter, the manager decided to call the police and report that there was a "Customer who was just standing in the store and not leaving after being told to leave". Upon information & belief the call was received by a 911 operator who asked a store employee specifically whether the suspect had any weapons or anything ? The employee replied that she was not aware of any.

26. NAPOLES was not an imminent danger or threat to any one, and such fact was clearly communicated by the employee to the 911 call operator indicating that they just wanted him to be outside the store area.

27. Approximately at 04:50 hours, San Diego Sheriff's Deputy Terence York (YORK) responded to the scene in his Patrol vehicle without emergency lights. When Deputy YORK arrived he approached NAPOLES who was indeed outside the store, near the Gas Pumps. YORK had a normal conversation with NAPOLES in which NAPOLES explained to the Deputy that his car let him down and that he needed help because he was far away from home. He wanted to call his friends or family to be picked up. NAPOLES was polite to Deputy YORK and never violent. NAPOLES was not a threat. NAPOLES was not armed in any way. He had no criminal record and he had no other interest at the gas station other than get help.

PLAINTIFF'S COMPLAINT FOR DAMAGES

28. NAPOLES showed Deputy YORK his California ID and YORK checked NAPOLES's criminal background with his Sheriff's Dpt. Dispatch. Upon information and belief, YORK was informed by his dispatch that NAPOLES had no criminal records. Deputy YORK and NAPOLES continued talk in a normal fashion as the evidence -video shows for approximately 20 minutes.

29. NAPOLES told YORK on many times that he "just needed help" either to tow his car or to call his family or friends because his car was not working. NAPOLES was clearly not a threat to Deputy YORK neither to anyone else. Deputy YORK allowed NAPOLES to use his cell phone (York's phone) so he could call his friends or family to pick him up.

30. One friend answered and upon information and belief he told NAPOLES that it was too early. That he could probably come and help NAPOLES but later that day.

31. NAPOLES insisted asking his friend to come as quickly as possible because he felt he was in a dangerous place. The phone call ended and NAPOLES in apologetic tone thanked Deputy YORK for letting him use his cell phone to call his friend.

32. NAPOLES asked Deputy YORK if it was ok to stay outside the store near the Gas Station Pumps. After all, the Manager said that he could stay around the pumps or in the parking area as long as he was not inside the store.

33. YORK told NAPOLES that the Manager did not want him anywhere around the store and that he had to leave. NAPOLES was at all times polite and respectful to Deputy YORK asking if he could stay at least near the illuminated area because he was afraid that something could happen to him. NAPOLES never engaged in any conduct that warranted the use of force by DEPUTY YORK. NAPOLES had no place to go, he was miles away from his non operable car, hundreds of miles away from his home and his phone was not working either. NAPOLES walked around the corner of the Gas station after Deputy YORK told him that he definitely had to leave totally outside the premises of the Gas Station. NAPOLES regrettably complied with Deputy YORK'S orders and upon information and belief he walked

towards a zone adjacent to the gas station. Deputy YORK went back to his patrol vehicle and remained inside his vehicle near the gas station parking.

34. Upon information and belief a few minutes later YORK observed that NAPOLES was walking near the Gas Pumps although he appeared to be now going towards the sidewalk adjacent to the gas station. DEPUTY YORK approached NAPOLES for a second time. But this time, Deputy YORK in a raised level of voice and command told NAPOLES to take his back pack off, while at the same time he engaged in the use of force pulling NAPOLES by the arm. Using force to apparently submit NAPOLES.

35. At that precise time as you will see on the video **(Exhibit No. 1)** a second San Diego County Sheriff's Deputy, Defendant  BRANDON "DELIMA" arrived to the scene. NAPOLES then was forcefully  thrown to the ground by both Deputies who were yelling to NAPOLES "stop resisting". NAPOLES did nothing to prompt the use of force. At third Deputy from San Diego Sheriff's Department arrived. Defendant Deputy FIELSTRA  who was apparently just driving by the area who approached to "assist" YORK and DELIMA.  Lastly, a border patrol agent was also driving nearby and decided to step out of his vehicle and approach to the area. Such border patrol agent did not use excessive force and it is not a Defendant here.

36. When NAPOLES was thrown by force to the ground DEFENDANTS; YORK, DELIMA AND FIELSTRA used unreasonable  force by placing their bodies on top of NAPOLES and deliberately hitting him with punches without any legal justification. NAPOLES was never violent to the Deputies. Instead, he was asking for help. At no point he was a threat to DEFENDANTS YORK, DELIMA OR FIELSTRA. NAPOLES had no weapons. NAPOLES had no criminal record. NAPOLES had not been violent towards YORK nor to anyone. NAPOLES was not an imminent threat to any of DEFENDANTS; YORK, DELIMA OR FIELSTRA. NAPOLES was clearly asking the Deputies to stop using force, Defendant DELIMA however, unreasonably pulled out his Taser Gun and shot NAPOLES with his TASER GUN on several occasions at a very close range.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

37. Upon plaintiff's information and belief NAPOLES was shot with DELIMA's Taser Gun several times. Approximately more than 6 times, to his chest and to his back. DELIMA shot his taser at NAPOLES on shooting mode and stun mode. NAPOLES can be heard on the body cam videos screaming for help, asking the Deputies to Stop using the taser. NAPOLES was screaming in pain asking for help and begging the Deputies to stop. The Deputies "apparently" lost their body cams in the struggle, which ended down on the rocks recording audio but pointing the video camera away from the struggle. A bystander eye witness however, recorded part of these incidents of force with his cell phone. And as Exhibit 1 shows, Defendants YORK, DELIMA AND FIELSTRA indeed used unreasonable force against NAPOLES hitting him on the ground just moments before DELIMA decided to use his taser against NAPOLES unnecessarily engaging in force again.

38. Moments later YORK is heard on the videos claiming that he was bit on his thumb.

39. Upon information and belief, YORK had been bit on his thumb by a Dog days before this incident, while he was training a Dog as a K9 officer. The body cams footage and the audio show that NAPOLES denied the bit.

40. **After the above 2 incidents of unreasonable use of force (the tackling & hitting punches ) & (the excessive use of the taser)** perpetrated by Defendants YORK, DELIMA AND FIELSTRA against NAPOLES, he ended up being already handcuffed, submitted by force to the ground, considerably injured by the multiple taser deployments, and the use of force by the Deputies. NAPOLES is heard on the video on multiple times clearly asking for help. Upon information and belief bystanders witnesses could hear NAPOLES yelling for help saying "please help me… please call 911, please help… they are going to kill me".

41. When NAPOLES was already handcuffed, tasered on multiple times, already on the ground, and undoubtedly under the total control of DEFENDANTS YORK, DELIMA AND FIELSTRA, the Defendants did not proceed to seek and provide and not even summon medical care to treat NAPOLES for the taser deployments

and the use of force. Instead, they requested additional Deputies to the scene, and also requested an extreme restrain device called the **"WRAP"** .

42. Defendants York and Delima ignored NAPOLES' pleas for help.   They Deliberately chose to ignore the risk of serious injury and the death of Napoles.

43. Deputy Defendant Evan McCormick (MCCORMICK) was one of the "additional Deputies" of the several Deputies that responded to the incident. When MCCORMICK arrived to the scene, as the body cam videos show, MCCORMICK applied  all of his body weight upon NAPOLES body despite the fact that NAPOLES was on the ground,  injured, tasered, and handcuffed. MCCORMICK used objectively unreasonable force by applying intense pressure with his knees and his 300 pounds body weight applied to NAPOLES chest. And then he outrageously used an air choke hold force technique forcefully pushing NAPOLES head and neck around the carotid artery using both of this hands with full force causing excruciating pain to NAPOLES. Defendant MCCORMICK   dangerously obstructed NAPOLES ability to breath.

44. Upon information and belief Defendant MCCORMICK   intentionally used unreasonable force by applying this restraint technique which involves pressure to the  carotid artery area obstructing the airflow to NAPOLES' head and brain.

45. When MCCORMICK was engaging in this **third incident of unreasonable use of force** against the decedent, NAPOLES asked multiple times for help, he told Deputy MCCORMICK specifically "Excuse me, I need to stand up ". He could not breath and he literally  yelled to the Defendants I am f….. dying ".  NAPOLES was not a threat to MCCORMICK  nor to anyone else.  NAPOLES was handcuffed, he had been already  tasered on multiple times, he was severely injured, he was submitted on the ground, he had no weapons, he had no criminal record, he did nothing to be subject to such shameful methods of restrain and excessive force.

46. NAPOLES lost consciousness moments after he was subject to MCCORMICK's air choke hold. As shown on the video ( Exhibit No. 1) the acts of Defendants, specially   MCCORMICK 's conduct was objectively unreasonable, excessive,

willful, malicious, deliberate, in-humane and shocking. The fact that MCCORMICK was yelling to his now fatal victim "stop resisting" while in essence he was killing a vulnerable human being, should definitely shock the conscience of anybody who is able to see this on video. Defendant McCormick conduct was not only unreasonable and excessive but slaughterous.

47. **A 4th incident of unreasonable and excessive use of force -by body weight- against decedent** occurred when DEFENDANTS MCCORMICK, NICHOLAS ADAMS, TERENCE YORK, and BRANDON DELIMA each of them used unreasonable and excessive force against NAPOLES by placing their body weight and /with their knees on top of NAPOLES' body who was already in serious need of medical attention, unconscious, and having problems to breath. Just Deputy MCCORCMICK's body alone with his gear uniform weights more than 300 pounds. Nevertheless, and despite all of the above, Defendants ADAMS, DELIMA, YORK AND MCCORMICK, each and every one of them used excessive force by placing their knees and their body weight over Napoles' body causing an obvious risk of serious injury and death by positional asphyxiation.

48. DEFENDANTS MCCORMICK, ADAMS, YORK AND DELIMA acted with deliberate indifference to Napoles serious medical condition, in a manner that shocks the conscience, when despite their knowledge that Napoles had been substantially injured and was already unconscious- they failed to allow the paramedics to evaluate and to treat Napoles medically and promptly. Instead of allowing the paramedics to medically attend Napoles, each and every one of these defendants **ADAMS, YORK AND DELIMA**, as well as McCormick continued to apply their body weight, pushing their knees with force directly against the body of Napoles, who was in serious risk of harm and or death. Therefore, Plaintiff respectfully here alleges that each and every one of these Defendants McCormick, Adams, York and Delima should be liable for violation of Napoles Rights' as protected by the 4th Amendment resulting in his ultimate Death.

49. **5th Incident of "Excessive use of Force" by Application of the WRAP. Defendants MCCORMICK, ADAMS, YORK AND DELIMA , each and every one of these 4 Deputies** engaged in unconstitutional, unreasonable and excessive use of force, when they unnecessarily and excessively used their force by proceeding to apply an extreme form of body restraint device called the **"WRAP"**, onto the inert body of Napoles. At the time the Defendants chose to use their WRAP device, Napoles was already handcuffed and unconscious. He was not a treat to any of them nor to anyone else. Defendants MCCORMICK, ADAMS, YORK AND DELIMA knew that Napoles had been injured by the prior incidents of tackles, punches to his face and his body, the multiple tasering, the choke hold to his carotid artery, and the application of unnecessary and excessive force by body weight against Napoles. Despite the above, and although he was already handcuffed and unconscious, these Defendants chose with deliberate indifference to subject Napoles to further harm and further risk of death by applying with force their wrap restrain device to Napoles in such vulnerable condition. In so doing – as shown on Exhibit 1- these Defendants conduct was shocking, and unconstitutional . And the proximate cause of the ultimate demise of Plaintiff's son.

50. Plaintiff alleges that the conduct of Defendants in this deadly incident was unconstitutional and constituted more clearly a criminal homicide recorded on video, rather than reasonable law enforcement procedural conduct. This matter was brought to the Attention of the San Diego County District Attorney's office for investigation. The DA's office determined -as usual- that the law enforcement personnel acted reasonably under the circumstances and shall bear no state liability.

51. The above incidents of excessive force happened in the presence of multiple SDSD Deputies who responded to the scene. Including SERGEANT DWAIN WASHINGTON, who did nothing to stop his Deputies from engaging in the wrongful conduct described above.

PLAINTIFF'S COMPLAINT FOR DAMAGES

52. After NAPOLES was subject to all of the above egregious abuse of force, Paramedics from the North County Fire Protection District (NCFPD) who had arrived and who were called at some point **to treat Deputy YORK  NOT NAPOLES,** asked the Deputies if NAPOLES needed attention at all, and if they could evaluate his medical condition.

53. DEFENDANTS **YORK ADAMS, McCORMICK AND DELIMA** clearly knew that NAPOLES had been tasered, subject to use of  force, subject to limitation of movement, and had been left already unconscious by MCCORMICK's air choke restraint.  Despite all the above, in deliberate indifference to Decedent's  serious medical need, Defendants **YORK, ADAMS AND DELIMA** along with McCormick were still not allowing the paramedics to operate freely and to medically evaluate and treat NAPOLES for his injuries and unconsciousness, without first ensuring that the WRAP device continued  to be applied to Napoles body regardless of his state of unconsciousness.

54. Moreover, DEFENDANT MCCORMICK outrageously decided to intervene again and placed a SPIT BAG covering Napoles' inert head aggravating the possibility of NAPOLES being unable to breath at all. NAPOLES  was eventually taken to the ambulance after the placing of WRAP & the bag to his head.

55. NAPOLES was eventually taken to a Hospital. The  paramedics personnel did their best and were able to bring his pulse back, although his condition was critically serious and the risk of  NAPOLES death remained high. He died the next day.

56. During the time that NAPOLES was at the emergency room, DEFENDANT DEPUTY RONALD BUSHNELL, was more concerned and preoccupied to try to obtain blood samples from NAPOLES' body rather than being concerned for the safety of NAPOLES. DEFENDANT DEPUTY RONALD BUSHNELL unconstitutionally  and without a warrant collected what he purportedly reported later to be blood samples of NAPOLES' body.  Upon being confronted by a nurse who told Defendant  BUSHNELL that he was not authorized to collect any blood

without consent or a warrant, Defendant indicated that he would take blood anyway and he could seek and obtain a warrant after taking NAPOLES´ blood with him.

57. Defendant BUSHNELL violated the 4th amendment constitutional rights of NAPOLES. A subsequently obtained warrant does not make DEFENDANT BUSHNELL conduct less wrong or less unconstitutional.

58. NAPOLES died on the next day at the hospital despite the great efforts of the Doctors and nurses treating him. The CAUSE OF DEATH as determined by SAN DIEGO COUNTY medical examiner's department; was SUDDEN CARODIOPULMONARY ARREST ASSOCIATED WITH PHYSICAL EXERTION DURING LAW ENFORCEMENT RESTRAINT AND METHAMPHETAMINE INTOXICATION.


## FIRST CLAIM FOR RELIEF

Substantive Due Process- Interference with familial relationship
( Violation to the Fourteenth Amendment – 42 U.S.C. § 1983)
**Against Defendants;** Evan McCormick, Brandon De Lima; Carl Fielstra, Terence York; and Nicholas Adams. )


59. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

60. Plaintiff had a cognizable interest under the Due Process Clause by the Fourteenth Amendment of the United States Constitution, to be free from state actions that unlawfully interfered with her familial relationship as mother of Marco Napoles.

61. The conduct and acts of Defendants Evan MacCormick, Brandon De Lima; Carl Fielstra, Terence York; and Nicholas Adams;  each and every one of them respectively were undertaken under the color of law and within the scope of their employment as deputy sheriffs for their employer COUNTY.

62. By the foregoing events of unreasonable and excessive use of force, Defendants caused an unnecessary Death. And in so doing, unlawfully interfered with the familial relationship between Plaintiff and her now dead son Marco Napoles.

Page 14

63. Plaintiff has therefore been deprived of the life-long love, companionship, comfort, education, support, society, care, financial support, and sustenance of DECEDENT, and will continue to be so deprived of all of the above including life necessaries such as shelter, food, medical care for the remainder of her natural life.

64. As a direct and legal result of Defendant's conduct; by use of excessive force, in deliberate indifference to the risk of death, Plaintiff was deprived of her right to a family relationship with her son in a manner that shocks the conscience.

65. DEFENDANTS acted and or failed to act knowingly and with deliberate indifference to the clear risk of Napoles' death. They knew their unconstitutional acts and or omissions would cause irreparable harm and death. They had sufficient time to deliberate, and chose the path of their actions. They deliberately did wrong.

66. The conduct of Defendant MCCORMICK in particular, was willful, wanton, malicious, done with deliberate disregard for the rights and safety of DECEDENT, with specific intent to cause pain, serious harm and death. Therefore it warrants in interest of justice the imposition of exemplary PUNITIVE damages.

67. Plaintiff brings this claim in her individual capacity and for her own rights under the 14th Amendment, and seeks general damages and attorney fees pursuant 42 U.S.C. 1988 (b).

### SECOND CLAIM FOR RELIEF
Unreasonable Search and Seizure—Excessive Use Of Force
**Against;** YORK, DELIMA, FIELSTRA, MCCORMICK, ADAMS, DOES 1-10
(Under the Fourth Amendment—42 U.S.C. § 1983)

68. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

69. The Fourth Amendment to the US Constitution provides the right of every person to be free from the use of excessive force by state actors acting under of color of law and within the scope of their employment. Defendants YORK, DELIMA, FIELSTRA, MCCORMICK, and ADAMS were acting under color of law and

within the scope of their employment as San Diego County Sheriff Deputies for Defendant County of San Diego. And as such, they wrongfully deprived DECEDENT of his rights to be free from excessive and unreasonable use of force when excessive force was used against him on at least **5 main incidents** of unreasonable use of force as described in detail above. Defendants York, Delima, Fielstra, MCormick, and Adams engaged respectively and each of them in excessive use of force by way of misconduct and wrongful acts against Marco Napoles including; the tackling, and the punching to Decedent's face and his body, (York, Delima & Fiesltra, **First incident**); the multiple tasering to his body, (DeLima-**Second Incident**);  the choke hold to his carotid artery, (McCormick- **Third Incident**); the application of unnecessary and excessive force by body weight against Napoles' after being injured and unconscious, (Adams, McCormick, York & Delima- **4ᵗʰ Incident**); and unnecessary and excessive use of force by use of an extreme method of restraint such as the "WRAP" on Decedent at a time when he was injured and unconscious.(McCormick, Adams, York & Delima - **5ᵗʰ Incident**).

70. As result of Defendant's misconduct and excessive use of force, MARCO NAPOLES has died.  And before his death, Decedent suffered extreme pain and suffering all of which it is now irreversible harm caused by Defendants in violation to the 4ᵗʰ Amendment of the US Constitution. Napoles  was just 29 years old. He suffered the loss of earning capacity and the opportunity to continue providing support and love to his mother – The Plaintiff-.

71. Plaintiff lost her son forever, his love, his care, his companionship, comfort, education, support, society, care, financial support, and sustenance. And the Plaintiff will continue  to suffer and to mourn the unfair loss of her son Marco for every day, and for  the rest of her life.

72. Plaintiff brings this claim  under the 4ᵗʰ Amendment and respectfully seeks survival damages for the egregious violations to her son's Constitutional Rights resulting in his Death.

73. Plaintiff respectfully seeks General Damages for the conduct of each and every of the above named Defendants as to this claim.

74. Plaintiff respectfully seeks Punitive Damages ONLY  as to Defendant EVAN MCCORMICK with respect to this Claim.

75. Plaintiff  respectfully seeks award of all of reasonable attorney fees as part of the cost of litigation of this constitutional rights matter pursuant 42 U.S.C. 1988 (b)

## THIRD CLAIM FOR RELIEF
Denial of medical care and deliberate indifference to a serious medical emergency with risk of death
(Under the Fourth Amendment 42 U.S.C. § 1983)
**Against** Defendants YORK, ADAMS, DELIMA, and DOES 11-20

76. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

77. The conduct of these Defendants York, Adams and Delima and Does 1-10 was under color of law and within the scope of their employment.

78. The Fourth Amendment protects the right to medical care and emergency medical assistance after an arrest. Decedent had a right to be free from unconstitutional acts depriving him from reasonable medical care and prompt attention in a medical emergency. To the extent that Decedent was placed under a lawful arrest without conceding the legality of such arrest here, Defendants YORK, ADAMS and DELIMA violated DECEDENT'S constitutional right to access to reasonable medical care, by failing to allow objectively reasonable post arrest medical care to Napoles in a serious medical emergency. Defendants failed to provide prompt, adequate and due medical care to NAPOLES at a critical time when he was severely injured with the risk of death.

79. Decedent was in serious need of medical care and emergency assistance  because he had been subject to brutal levels of force by others including these  same Defendants YORK,  ADAMS and DELIMA as described above.

80. After use of excessive force by punches to his face and body, (York) and the excessive use of force by multiple discharges of taser against NAPOLES (Delima), as well as the use of body weight (Adams, McCormic, Delima and York) including the use of a Chock Hold by McCormick, defendants Adams, Delima and York, clearly knew that they should have reasonably procure and allow immediate medical assistance to NAPOLES in accordance with SDSD own policies and manuals for individuals in such conditions at the time of an arrest. Further, the evidence shows that instead of providing or allowing the promptly summoning and provision of medical care to Napoles, paramedics -who were actually called to medically treat and care York and not Napoles, could not proceed to attend Napoles immediately because Defendants deliberately engaged in more physical distress and subjected Decedent to more egregious levels and methods of unreasonable force which ultimately resulted in his death. Instead of allowing the medical personnel to do their job, Defendants unreasonably proceeded to apply the wrap to the decedent who was unconscious and in obvious state of medical distress.

81. As a result of Defendants Deliberate Indifference to the serious need for prompt medical assistance, NAPOLES ultimately and proximately died. He suffered extreme pre-death pain and suffering, and died after his agony. Defendants are liable for the loss of his life and the loss of enjoyment of his life. NAPOLES suffered loss of earning capacity and ability to provide support for his mother.

82. Therefore and based in the above, Defendants <u>YORK, ADAMS & DELIMA</u> are liable because by not summoning medical attention, and not allowing the paramedics to treat Napoles but engaging in more unnecessary violence and unreasonable and risky methods of restraint such as the wrap, they have failed to act reasonably under the totality of the circumstances, viewed from the perspective of the reasonable person on the scene, to prevent the constitutional violations.

83. The conduct of Defendant deputies was excessive, and unreasonably done with deliberate and reckless disregard for the rights and safety of DECEDENT and has proximately resulted in his Death.

PLAINTIFF'S COMPLAINT FOR DAMAGES

84. Plaintiff Dolores Rosales brings this claim pursuant to the 4th Amendment and seeks general damages according to proof at trial.

Plaintiff seeks costs and Attorney Statutory Fees pursuant to 42 U.S.C § 1988

### FOURTH CLAIM FOR RELIEF
Failure to Train and or to Supervise "*Monell*"
(42 U.S.C. § 1983)
(Against Defendant COUNTY OF SAN DIEGO, & Defendants DOES 21-26 )

85. Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

86. The County of San Diego and Supervisory Doe Defendants 21-30 are each liable for the deprivation of Marco Napoles' Constitutional Rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which held that municipal entities may be held liable for violations of Constitutional rights committed by its employees if the violations arose from:

   a) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent ad well settled as to constitute a custom or usage" with the force of law;

   b) a Failure to adequately train municipal employees resulting in the deliberate indifference to the constitutional rights of citizens

   c) The ratification of illegal and unconstitutional conduct by an individual with finally policy -making authority.

87. Here, Defendants County of San Diego and Supervisors Does 21-30 were aware of the widespread problems within the San Diego County Sheriff Department as to the excessive use of force within the department.  Despite their knowledge, Defendants took no action to adequately train and supervise their Deputies. Defendants have condoned and acquiesced to the abusive behavior of their

PLAINTIFF'S COMPLAINT  FOR DAMAGES

subordinates by refusing to retrain them, to supervise them, to discipline them, and or to correct their abusive unconstitutional behavior resulting in serious harm.

88. Defendant COUNTY OF SAN DIEGO had prior knowledge that other citizens had been victims of law enforcement abuse by San Diego County Sheriff Deputies, and deliberately have chosen not to provide proper training and supervision. This has resulted in more constitutional violations such as the Death of Plaintiff's son.

89. Among other, the County was aware of the risk involved by way of the following;

90. *Torres v. Dylan Haddad et al.,* **USDC Case No. 15cv01151-CAB-BLM**. In Torres SD COUNTY was sued after Deputies critically injured Mr. Torres by using excessive force including multiple tasering in a parking lot in Vista CA. According to the complaint, the victim suffered permanent damage to multiple organs including his kidney and brain. The Complaint alleged systematic failure to train and supervise SD County Sheriff Deputies in regard to the unreasonable, use of force including taser, involving risk of serious harm and even death. Defendant County of San Diego paid by settlement 3 Million Dollars in consideration for the damages. The Torres matter on its own pleadings provides detailed information about multiple other prior incidents -cases- demonstrating that the County of San Diego had and continues to have *Notice* that its Deputies were and are becoming more and more often involved in incidents of constitutional violations resulting in serious injuries or death. The County of San Diego however, has failed to act, to re train, to supervise its Sheriff Deputies in order to prevent further harm to others.

91. *Branch v. County of of San Diego et al* Case No. 3:15cv2336. In this case, the Defendant County of San Diego, was again subject to judicial proceedings for Constitutional violations involving misconduct of San Diego County Sheriff Deputies prior to this case. According to Mr. Branch's complaint, he was victim of unconstitutional and excessive use of force by *Chockehold* restraints to his neck as perpetrated by a San Diego County Sheriff Deputy. The case was settled for substantial amount of money. As the record and the dockets of our Southern District Courts already show; for the last few years, Defendant County of San

Diego has been  made aware of repetitive incidents of misconduct by deputies resulting in serious unconstitutional law enforcement conduct. Defendant however, has deliberately chosen not to provide the adequate and necessary training, the supervision urgently needed to prevent further violations to the constitutional rights of the public that they have taken an oath to serve. The conduct of the entity defendant at hand, is precisely what the *Monell* judicial precedent aims to deter and or to judicially redress. And therefore, Defendant County of San Diego should be liable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658.

92. ***Strode v. County of San Diego Et Al.* Case No. 3:18cv670.** In Strode, San Diego County Sheriff's Department deputies unnecessarily escalated a non violent situation to the point of excessive use of force. The deputies threw Strode onto the ground, kneed his torso, punched his face, and shocked him twice with a TASER. Hogan (a SDPD officer) that had  arrested Hogan without need of any force, simply stood astonished  to watch how SD county deputies were taking a non violent situation to an excessive use of force and  unconstitutional attack. Just like in this case the Border Patrol Agent did, when the SD Deputies unfairly attacked Napoles. *Strode*  settled in Court proceedings. Again, despite the evident widespread custom and practices of Deputies engaging repeatedly in excessive use of force, COUNTY has failed to provide adequate training and supervision to prevent these acts of unconstitutional law enforcement conduct.

93. *KJP v. County of San Diego* **Case No. 15-cv2692.**  This is another unfortunate wrongful-death lawsuit which is currently pending and against the County of San Diego in this Federal Court.  In KJP, Sheriff Deputies were sued for tasing and beating a mentally ill man, "Lucky" Phounsy. According to the complaint, Phounsy had been battling severe insomnia for several days. He began to have auditory hallucinations and paranoia. When medications did not work, his family called 911 in order to prevent Phounsy from any danger. The complaint alleges that on April 13, 2015, Sheriff's deputies arrived at Phounsy's Santee home, completely unprepared to deal with the situation. The deputies did nothing to de-escalate the

situation and were aggressive and profane. Deputies used force to restrain Phounsy and tased him multiple times and struck him repeatedly with their batons. Once under control, deputies then **"hogtied"** Phounsy and put him in an ambulance. He was then sedated and gagged. Phounsy's heart stopped beating before arriving at the hospital. He died a few days later. Again, the Deputies in KJP engaged in different types of excessive use of force including body restrain, taser, and hogties resulting in Death. Thus, Defendant COUNTY has been well aware that deputies continue to use excessive force, and then lethal methods of restraints in deliberate indifference for the life of citizens. The COUNTY continues up to this date, to refuse to acknowledge in any way that there is an obvious repetitive problem  going on within its Sheriff Dpt. Too many Deputies, too  many times, engage in excessive use of force resulting in serious injury or death. If DEFENDANT continues to fail to acknowledge this issue at all, it cannot and -will not- be able to fix it or resolve it.  Therefore, Judicial intervention is morally and legally necessary in this case pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658.

94. *David Collins v. County of San Diego* **Case No. 2017-00028981** (Superior Court of California County of San Diego. In *Collins* the County was sued for the unconstitutional conduct of its deputies occurred in an incident with Mr. Collins in 2016. The Jury found that the County was liable for the damages caused to  the victim who suffered severe brain damage after being subject to force, and then when Defendants failed to allow the paramedics to treat the victim for his medical emergency condition.  This case should have put Defendant on notice and more importantly, on "Action" to remediate these series of lamentable and repetitive incidents occurring with  several members of the community. When the Jury decided in favor of the Plaintiff in Collins, the jurors sonorously spoke their verdict that **Defendants shall be liable for 12 Million dollars**  for their unconstitutional conduct.  Defendant however refuses to comply with that Judgment and continues to refuse  to provide adequate training, discipline, supervision of its sheriff deputies.

95. Multiple media outlets such as the San Diego Tribune, as well as to different civil group organizations; have documented the statistical ranking standard of the San Diego County Law Enforcement authorities, including SDSD. For example according to the group Campaign Zero- Police Score Board; San Diego Sheriff's Department reported **95** deadly force incidents from **2016-2018**, including 22 police shootings and 73 other force incidents causing death or serious injury. 12 people were killed in these incidents and 83 were seriously injured. This is **4.6x higher deadly force rate** per arrest than San Diego Police Department during this period and a **higher rate than 26 of California's 30 largest policing agencies.** SDSD used force against 96 people during these 95 incidents. 68 of these people (71%) were **unarmed**. Only 8 of the 96 people (8%) were allegedly armed with a gun. **Tasers, strangleholds and weaponless physical force made up 67% of incidents** causing death or serious injury. At least 14 people SDSD used deadly force on reportedly had **disabilities** - 13 people had signs of mental illness and one person had physical disabilities. Of 22 people shot by SDSD from 2016-2018, 14 (64%) were Latinos. Latino people were 5.5x more likely to be shot by SDSD than white people per arrest.

96. The failure to train and supervise in spite of all of the above, it is so closely related to the deprivation of the DECEDENT'S rights, as to being the actual moving force that caused the ultimate death of NAPOLES. And by reason of DEFENDANT'S deliberate decision of failing to act, to train, to supervise, to discipline, and to prevent unconstitutionalities, death was caused in violation of the 4th Amendment.

97. Accordingly, Defendants COUNTY and DOES 21-26 are liable for compensatory damages under 42 U.S.C. § 1983.

98. Plaintiff seeks reasonable attorney fees pursuant 42 U.S.C. 1988 (b)

PLAINTIFF'S COMPLAINT FOR DAMAGES

# FIFTH  CLAIM FOR RELIEF

Municipal Liability—Unconstitutional Custom or Policy (42 U.S.C. § 1983)
(**Against** Defendants COUNTY and DOES 27-30)

99. Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

100.    The individual Defendants acted under color of law.

101.    Upon Plaintiff's information and belief on or about August 16 2018, and for at least five years prior to this deadly incident, Defendants COUNTY OF SAN DIEGO, and Supervisory Defendants DOES 27-30, have established, maintained, applied and allowed a custom, policy and practice of using and permitting the use of unnecessary and unreasonable force by;

a) Condoning peace officers code of silence through the SD Sheriff Department.

b) Failing to discipline officers who engage in the use of unnecessary unreasonable force resulting in serious injury or death.

c) Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessary and  unreasonable force.

d) Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessarily and excessively  their taser guns.

e) Failure to adequately supervise and control officers known or who reasonably should have known to have used unnecessarily and dangerously the WRAP.

f) Failure to adequately supervise and to train deputies in a manner that is safe and consistent with civil police force standards.

102.    By reason of the aforementioned customs and practices, Plaintiff have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future financial support of DECEDENT. Accordingly, Defendant COUNTY shall be liable to the Plaintiff for compensatory damages and reasonable attorney fees under 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF

Negligence (Cal. Govt. Code § 820 and 815.2(a)  & California Common Law)
(Wrongful Death)
(**Against** Defendants YORK, DELIMA, MCCORMICK, ADAMS, FIELSTRA
AND COUNTY OF SAN DIEGO and Does 31-40

103.     Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

104.     The actions and inactions of these named above Defendants were negligent and reckless, including but not limited to:

a.  The negligent use of unreasonable excessive force against NAPOLES on several occasions and for a long period of time as described in paragraphs above, causing ultimately his death. Including but not limited to physical force, taser, carotid arteria -air choke hold, positional asphyxia by application of body weight, and use of the  WRAP device.

b.  The negligent handling of the situation with DECEDENT, including, but not limited to, negligently making use of a taser upon DECEDENT on several times, to both chest and back and by shooting mode and stun mode.

c.  The negligent tactics and handling of the situation with DECEDENT, including, negligently placing the DECEDENT in the ¨WRAP¨ restraint device when he was already unconscious, after being tasered and the negligence of subjecting him to air choke hold restraints and other methods of force in multiple occasions, and all instead of medically evaluating and providing and or allowing others to provide emergency medical care.

d.  The negligent failure to medically evaluate him while he was having a medical emergency and going through medical distress as clearly seen on the video recordings.

e.  The negligent failure to render and or to allow others to render timely medical aid to the decedent when he was in a state of medical emergency.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

     f.  The negligent failure to allow the paramedics to provide timely medical emergency care to the Decedent.

     g.  The negligent training and failure to train SDSD sheriffs on the issues and topics set forth above in this complaint.

105.    As a direct and proximate result of Defendants' negligence, DECEDENT died and Plaintiff was deprived of the life-long love, companionship, comfort, support, society, care and sustenance of her son, and will continue to be so deprived for the remainder of her natural life.

106.    COUNTY is vicariously liable for the wrongful acts of its employees pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

107.    Plaintiff seeks wrongful death damages under this claim.  Plaintiffs also seek costs, interest and attorneys' fees under Ca Civil Code §1021.5.

## SEVENTH  CLAIM FOR RELIEF

Violation of Tom Bane Civil Rights Act (Cal. Civil Code §52.1, 52 51.7 51.9 )

(**Against:** Defendants McCormick, Delima, Fielstra, Adams & York, Does 41-44

108.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

109.    Defendants used objectively  unreasonable force against the DECEDENT and used violence, intimidation, threats, including deadly techniques specifically intended to cause intimidation, coercion, in deliberate interference    with the exercise or enjoyment by Decedent, and plaintiff of rights secured by the Constitution or laws of the United States, and or by rights secured by the Constitution and Civil Liberties and laws of this state.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

110.    DECEDENT was subject to cruel suffering and agony  losing  his very young life to no reason. The conduct of  Defendants was a substantial factor in causing  DECEDENT'S DEATH. Thus, they shall be liable.

111.    The conduct of Defendant McCormick  in particular was malicious, wanton, oppressive, with malice aforethought, and deliberate disregard for Decedent rights protected  under  the  constitution.  Thus,  Plaintiff  seeks  remedies  by   award  of exemplary damages against MCCORMICK.

112.    Plaintiff  seeks  General  damages  according  to  proof  at  trial  as  to  the remaining named defendants of this claim, including costs, interest, and reasonable attorneys' fees under **Ca Civ Code §52.1 and §1021.5.**

### EIGTH  CLAIM FOR RELIEF
False Imprisonment- Under CA Claim
(**Against;** YORK, DELIMA AND FIELSTRA and Does 45-46)

113.    Plaintiffs  repeat  and  re-allege  each  and  every  foregoing  allegation  and paragraph set forth above with the same force and effect as if fully set forth herein.

114.    Defendants YORK, DELIMA AND FIELSTRA  by intentional acts with the use of force confined Decedent into a bounded area by the use of unreasonable force causing damages resulting in Death without legal justification.

115.    NAPOLES was a licensee at the commercial premises of the Gas Station. Upon Defendant YORK's  request to leave NAPOLES complied and left. At the time  when  Defendant  YORK  approached  NAPOLES  for  a  second  time, NAPOLES  was walking towards the sidewalk area of the Gas Station which is public property not private. Defendants conduct  was a substantial factor in causing the death of DECEDENT and damages to Plaintiff.

116.    Plaintiff seeks both survival and general damages under this claim, as well as costs, interest, and attorneys' fees under Ca civ code §1021.5.

117.    COUNTY  is  vicariously  liable  for  the  wrongful  acts  of  its  employees pursuant to section 815.2

PLAINTIFF'S COMPLAINT  FOR DAMAGES

## NINETH CLAIM FOR RELIEF

Battery (Cal. Govt. Code § 820 and California Common Law)
(Wrongful Death)
(**Against** YORK, DELIMA, MCCORMICK AND ADAMS, Does 47-48 )

118.     Plaintiff repeats and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

119.     Defendants used excessive and unreasonable force against  NAPOLES on several occasions as pleaded above to which NAPOLES  did not consent and which caused NAPOLES' death.

120.     As a direct and proximate result of Defendants' conduct as alleged above, the Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care, financial support, and sustenance of her loving son NAPOLES,  and she will continue to be so deprived for the remainder of her natural life. The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT.

121.     Plaintiff seeks general damages including survival damages under this claim, as well as costs, interest, and reasonable  attorneys' fees under Ca Civ Code §1021.5.

122.     COUNTY is vicariously liable for the wrongful acts of its employees pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

# TENTH  CLAIM FOR RELIEF
Unreasonable Search and Seizure—Taking of blood without consent or warrant
(Fourth Amendment—42 U.S.C. § 1983)
(**Against** DEFENDANT BUSHNELL, and DOES 49-50

123.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

124.    The Fourth Amendment protects the rights of the person to be protected from unreasonable searches and seizures. Defendant BUSHNELL without consent and without a warrant alleges to have obtained blood samples of the body of Plaintiff's son before he died at the hospital. To the extent the samples of blood in fact pertain to the  now deceased NAPOLES, any samples obtained while he was alive without his consent and without a warrant should be considered the fruit of a poisonous tree vitiated with the flagrant unconstitutionality of Defendant's acts . The Conduct of Defendant BUSHNELL offends the fundamental notions of the 4th Amendment and it is the legal cause to  the Constitutional harms here alleged.

125.    Plaintiff brings this claim  under the 4th Amendment rights and respectfully asks for general damages according to proof at trial.

PLAINTIFF'S COMPLAINT  FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request entry of judgment in her favor and against the Defendants as follows:

- For compensatory damages against all Defendants, including  general and survival damages according to proof at trial. (Including; pre-death pain and suffering under the federal survival claims and loss of life and loss of enjoyment of life under the federal and state survival claims) and wrongful death damages under state law, in an amount to be proven at trial)

- For loss of financial support;

- For funeral and burial expenses;

- For exemplary and punitive damages against Defendant **Evan McCormick.**

- For pre- and post-judgment interest at the maximum legal rate;

- For reasonable  attorneys' fees pursuant 42 U.S.C. §1988 (b);

  Ca Civ Code    §52.1, 52 and Ca Civil Code §1021.5;

- For such  other relief as the Court may deem just and proper.

- A Trial by Jury is hereby respectfully demanded.



Respectfully Submitted by:


Date:   February 4th 2021                    */S/Jesus Eduardo Arias Esq., LL.M.*
                                                             Attorney for Plaintiff

PLAINTIFF'S COMPLAINT  FOR DAMAGES